# CHARLESTON.

STATE *ex rel.* Z. G. BUNCH *et als. v.* C. P. FORTNEY *et als.* STATE ROAD COMMISSION.

Submitted January 30, 1923. Decided March 13, 1923.

1. CARRIERS—*Permit to Operate Motor Bus Line Granted by State Road Commission Not Revocable, Except for Cause.*

   Where the State Road Commission has granted a permit to operate a motor bus line, under Class I, sec. 82, chap. 112, Acts 1921, it cannot be withdrawn, nor can it be revoked except for cause set forth in the Act. (p. 296).

2. MANDAMUS—*Lies to Compel Road Commission to Issue Motor Bus Permit.*

   If the Road Commission in such case refuse to issue the permit, it will be compelled to do so by writ of mandamus. (p. 296).

   (MILLER and LIVELY, JUDGES, dissenting).

Original mandamus by the State, on the relation of Z. G. Bunch and others, against C. P. Fortney and others, State Road Commission, commanding defendants to issue to petitioners a permit to operate a bus line between the city of Huntington and the town of Hurricane.

*Writ awarded.*

*J. H. Strickling,* for relators.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for respondents.

LITZ, JUDGE:

G. Z. Bunch, S. G. Saunders, E. L. Covington, L. E. White, R. E. Mitchell and E. R. Martin, partners under the name of

Huntington-Charleston Motor Bus Company, in their pe-
tition, among many other matters, say that in December, 1922,
they made application before the State Road Commission,
under Class I, sec. 82, chapter 112, Acts 1921, for a permit to
operate a bus line on the public road between the city of
Huntington, Cabell county, and the town of Hurricane, Put-
nam county, with cars scheduled to leave each terminus
hourly, thirty minutes after the departure of cars operated
by White Transportation Company, who had been operating
on an hourly schedule over the route from Huntington to the
town of Milton since January, 1922, thereby giving the pub-
lic half hour service; that at a hearing upon said petition at
Charleston January 2d, 1923, at ten o'clock a. m., before
C. E. Hiner, one of the Commissioners of, and acting for,
said Commission, the petitioners produced evidence showing
that they were proper and fit persons to operate a bus line
under the permit applied for, and that the granting thereof
would promote public welfare and serve a public demand and
necessity; that said White Transportation Company kept
in its employ certain chauffeurs addicted to intoxication
while driving its cars and that the said White Transportation
Company, for reasons stated, did not and could not properly
care for the traveling public.

Petitioners further state that at the conclusion of the hear-
ing Commissioner Hiner announced that the Commission
would consider the matter and notify petitioners; that on the
following day the White Transportation Company published
in a Huntington newspaper a schedule of one-half hour ser-
vice, which included the schedule of service applied for by
petitioners, and began, and still is, operating its cars on
such schedule; that there was no hearing upon the applica-
tion of the White Transportation Company to operate cars
on a one-half hour schedule.

That in response to a letter written January 6th, 1923, by
J. H. Strickling, one of counsel for petitioners, the following
letter was written and sent by the Commission thru the
mail to him:

"THE STATE ROAD COMMISSION
OF WEST VIRGINIA
CHARLESTON, W. VA.
January Eighth, 1922.

"Hon. J. H. Strickling,
Huntington, West Va.
"Dear Sir:

"On Saturday the 6th inst., we advised Mr. F. B. Shannon, Attorney of this City, that we had decided to grant a permit to the Charleston & Huntington Motor Bus Company and requested him to come to see us and go over the schedule as we thought there should be some few changes made in it.

"Today we are in receipt of your very insulting letter which has been carefully gone over by the members of the Commission and we have come to the conclusion to withdraw our consent to grant this permit as we feel that a Company who would allow their Attorney to write a letter of this kind and character before knowing of what he wrote, would no doubt violate our rules and regulations and cause continual friction.

"Yours truly,
STATE ROAD COMMISSION,
(Signed)   C. E. HINER
C. E. HINER
Commissioner.

CEH:JAC
Copy to F. B. Shannon."

Petitioners pray for an alternative writ of mandamus against C. P. Fortney, E. B. Stephenson and C. E. Hiner, State Road Commissioners, commanding them to issue to the petitioners, as the Charleston-Huntington Motor Bus Company, a permit to operate a bus line consisting of seven cars between the city of Huntington and the town of Hurricane, in accordance with schedule filed with the application of petitioners.

The respondents, C. P. Fortney, E. B. Stephenson and C. E. Hiner, as members of the State Road Commission, in their return to the alternative writ awarded, and insofar as here pertinent, aver that at the hearing of petitioners' application, "There was submitted evidence tending to show that public necessity required the issuance of the permit; and that the White Transportation Company was not taking care of the

traveling public; and that at least two of the drivers of the White Transportation Company were in the habit of driving on the public highways while intoxicated; that the cars of said White Transportation Company were in many instances overloaded; and other evidence tending to show the propriety and necessity of granting the permit prayed for."

Respondents deny, however, that no hearing was had on the application of the White Transportation Company for a schedule of one-half hour service, but aver that when the application was considered on January 2d, 1923, representatives of the petitioners were present and offered no objection to the granting thereof, and that believing the interests of the public would be promoted thereby, the Commission granted the same.

In explanation of the letter above, respondents say that it, "Was written under the impulse of the moment and that said letter did not set forth the real reason for the refusal of the Commission to grant said permit; and that C. E. Hiner's letter to Shannon to the effect that the permit had been granted was merely the statement of the individual judgment of one member of the Commission, who heard the evidence in support of the application, and was in no sense an expression of the official finding of a quorum of the members of the Commission, and could in no wise be construed as an official finding that the permit should be granted." To justify their action in finally refusing the application of petitioners, respondents further say that, "After the premature expression of Commissioner Hiner's personal views to Mr. Shannon, the matter was maturely and carefully considered in a conference with all of the members of the Commission present, at which conference it was finally decided that public necessity for the granting of said permit did not then exist, there being insufficient traffic to support two competing lines, as was clearly evidenced by the fact that the Ferguson line to which a permit had previously been granted, was not a success, and that a competent line was already operating and willing to give additional service when required; and believing that the public welfare would

not be promoted by the granting thereof, the permit was therefore accordingly refused on January 9th, 1923, and an order was entered on the records of the Commission refusing such permit.''

In so far as pertinent, we see no difference in legal effect between the petition and the return of respondents, except as to what took place in respect to the application of the White Transportation Company to operate its cars on one-half hour service. Respondents claim the application was considered and granted in the presence of representatives of petitioners, without protest. Petitioners, on the other hand, contend they protested and that there was no formal hearing on the application. The contention of petitioners must be true. Their application for the very same service would certainly constitute protest to its being granted to another. But even this matter may be eliminated.

It is not a question here as to whether this Court should by mandamus compel favorable consideration by respondents of petitioners' application. That has already been done. Respondents show, in their letters to Strickling and Shannon, attorneys for petitioners, that they have already granted the permit to petitioners. Then nothing remains but its issuance, —a mere ministerial act. 18 R. C. L. pp. 127, 128, and authorities there cited. The granting of the permit was amply justified on the evidence, adduced at the hearing, tending to prove, as shown by respondents' return, ''That public necessity required the issuance of the permit; that the White Transportation Company was not taking care of the traveling public; that at least two of its drivers were in the habit of driving on the public highways while intoxicated; and that the cars of said White Transportation Company were in many instances overcrowded.''

The respondents cannot now revoke that permit without cause. Under the statute, ''Permits, when granted, shall be good until the first day of January next following, and may be renewed at their expiration unless for some good cause the Commission or other licensing authority shall refuse to reissue the same.'' The only cause given in the statute for

revocation of the permit is violation of some of its provisions. Respondents have attempted revocation of this permit, not on the ground that petitioners have been guilty of any of such violations, but upon the mere theory that the White Transportation Company is in a position to take care of all the business; and this idea is presented by respondents in the face of the evidence showing, as their return admits, the public demand and necessity of the service to be rendered by petitioners under such permit.

The peremptory writ is therefore awarded.

*Writ awarded.*

LIVELY, JUDGE *(dissenting)*:

I regret to file this, my first, note of dissent. A casual reading of the statute under which these road permits are issued, discloses the reason and intent of the enactment. No one is entitled as a matter of right to such permit. They are not of the same class or kind of permits as licenses for hotels, restaurants, pool rooms, &c. A permit or license to operate on the public roads as a carrier can only be issued when the public necessity and welfare demands it. No such condition precedent applies to the other class of licenses above referred to. Any proper person shall receive them if they desire, without reference to public necessity. The business judgment of the licensee governs in that regard. He cannot arbitrarily be refused license when he is a proper person and conforms to the requirements of the law governing other applicants. *Houvouras* v. *City of Huntington,* 90 W. Va. 245; *State ex rel. Hoffman* v. *Town of Clendenin,* decided this term. A permit or license to operate on the roads as a common carrier is quite different. The public necessity controls; and if that necessity exists and has been met and relieved, further permits to the same licensee or any other person is at an end. Full investigation is required to ascertain the public necessity, and when that is determined and the permit or license issued the recipient is placed under bond, his schedule and rates of fare are fixed, and he is required to operate under

strict rules and regulations. A monopoly of the service may thus be created on any particular road, and such monopoly under strict rules as to schedule, rates, accommodation and facilities, may be beneficial and desirable. Time and experience will tell. Bearing in mind that the public welfare and necessity is the controlling factor, what have we here? Two applicants apply to the Commission for permits to operate over the same road upon the same schedule. One has been operating on the hour schedule and has applied for the half hour schedule also; the other, an untried applicant, desires to operate on the half hour time. A hearing is had on each application the same day. It is shown, and the Commission so finds, that public necessity and convenience required the additional service on the half hour schedule. Commissioner Hiner, who heard the evidence, four days later, advised the relator or his counsel by letter, that he would be given a license to operate on the half hour schedule. But later, when the full membership of the commission goes over and considers the evidence and the situation, the conclusion of commissioner Hiner is overruled, permit having been granted to the White company for the half hour service in addition to the hour schedule. Under the statute one commissioner cannot control. The permits must be granted by the commission. We have familiar illustrations where a member of the county court or school board attempts to bind the others by his individual act. The return so states; and it is also stated in the return that there is *now* no public necessity nor demand for additional service. The public is *now* fully served, and this is a fact not controverted. The high character, integrity and administrative ability of the members, well known throughout the State, impels belief in the existence of this controlling fact as stated in the return. It may be that relator should have been granted the half hour schedule. It may be that the serious provocation of the letter of counsel which is termed "insulting" (and which appears in the record but not in the opinion) produced irritation and caused the sending of commissioner Hiner's letter, copied in the opinion, and which the return states was

"written under the impulse of the moment and did not set forth a real reason for the refusal to grant said permit." It may be that the provocation influenced the result. But these matters are extraneous to the controlling question before us; and on matters so barren and unfruitful, I do not care to dispute. The opinion is based on the assumption that the Commission has already granted relator the permit, and its issuance should be compelled by mandamus. The Commission says it has not granted this permit, and that fact is uncontroverted.

What is the result of the issuance of the writ of mandamus? The public is now adequately served by a sufficient number of conveyances running on the hour and half hour between the two points. It is immaterial in this proceeding what person or company operates them. The writ operates *in presenti.* By this writ additional conveyances, fourteen in number I think, will be put on this road, operating on the same schedule, when no public necessity demands them. We say by this writ that at this present time there is a public necessity and demand for these additional conveyances, so palpable and urgent that it calls for the extraordinary and harsh remedy of the writ of mandamus. Perhaps it would be wandering into the realm of speculation and fancy to say what the result may be from congested traffic, accidents, law suits, and business failures. I do not care to be a part of the efficient cause which may bring about such results. I do not believe the courts should place their judgments above that of the Commission which is in close touch with the public necessities, and regret that I cannot join my brethren in their viewpoint.