# CHARLESTON.

W. A. JOHNSON *v.* STATE COMPENSATION COMMISSIONER and ELKHORN PINEY COAL MINING COMPANY, *a Corporation*

(No. 6841)

Submitted September 3, 1930. Decided September 9, 1930.

*David D. Ashworth* and *Clay S. Crouse,* for appellant.

*H. B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *T. J. Michie, Jr.,* for Elkhorn Piney Coal Mining Company, a corporation.

Woods, Judge:

Claimant, a coal loader, was seriously injured by falling slate. An examination at the Beckley Hospital shortly after the accident showed a fracture of the skull on the left side running to the base through mastoid region, fracture of occipital bone near foramen magnum, crushed index finger of right hand with several lacerated wounds of hand, one large scalp wound and several smaller wounds on face and forehead. The injury to hand necessitated amputation of index finger just behind knuckle joint. An award of $16.00 per week for 40 weeks was increased to 25%. A further increase was refused at the end of the 100 weeks. However, the claim was again re-opened in December, 1929, and claimant directed to Dr. McCulloch of the Beckley Hospital for re-examination. This report of Dr. McCulloch referred to a former examination made by him just prior to the 25% award in which he had stated that ''complaint at this time is pain in head, partial loss of hearing, partial loss of sight, double vision and dizziness''; and ends with the statement that ''The change in this man's condition since the above examination has been some improvement in vision, improvement in hearing and the *additional symptoms of pain and swelling in right hand and wrist, hot and cold sensations and attacks of numbness in lower ex-*

*tremities.* The writer has seen this claimant on numerous occasions since his injury and I believe he is honest in his statements and that he has the symptoms he complains of. We know that this man sustained very serious injuries, we know he has considerable loss of vision, we know he has reduced hearing in right ear and we know that the train of symptoms that he complains of are those very frequently following serious head injuries that he had. *I still am of opinion that this claimant should be awarded a 50% permanent disability and claim closed.''* Claimant was notified, by letter of January 7, 1930, of the award of 50% disability.

On request of the employer, received just after notice of a 50% award had gone out to claimant, the Commissioner directed one of his inspectors to inquire into the earnings of complainant since the 25% award, and held up payment under the new award during such inquiry. After a consideration of the inspector's report, which disclosed that claimant's monthly earnings as slate picker on tipple and as trackman were averaging but slightly less than his earnings as coal loader (which was due to the fact that he had worked more days per month since the injury), the Commissioner set aside the 50% award.

It is contended by claimant that the matters set up in the report were not sufficient to warrant such action.

We have held in a number of cases that the finding of fact by the Compensation Commissioner should be treated as the finding of a judge, or a verdict of a jury, and will not, as a general rule, be set aside if there is substantial evidence to support it. *Kincannon* v. *Ott, Com.,* 108 W. Va. 428, 151 S. E. 311; *Heaton* v. *Comp. Com'r.,* 106 W. Va. 563, 146 S. E. 368. Following this analogy, a finding, once made, should not be set aside by the Commissioner, except for good cause. The mere fact that the Commissioner's jurisdiction is ''continuing'' should not be interpreted as a license to set aside a finding on insufficient evidence. Once having acted, his finding must stand in the absence of some good reason for setting it aside. In *State ex rel. Bunch* v. *Fortney, et al.,* 93 W. Va. 292, 116 S. E. 753, this Court held that once the Road Commission had determined to grant a permit, it could not change its finding, even though the permit had not been actually issued.

This brings us to a consideration of the evidential value of the inspector's report. As already noted, it pertained to the wages being paid by the company, in whose employ the claimant was when injured. In order to determine its evidential value, we must determine whether or not wages earned since an accident can be relied on in arriving at the percentage of disability. Our statute reads: "If the injury causes permanent disability, the percentage of disability to total disability shall be determined and the award computed and allowed as follows: * * * for a fifty per centum disability, fifty per centum of the average weekly earnings for a period of two hundred weeks." Chapter 15P, section 31(c). "Disability" as used in a somewhat similar section in the New Jersey Act, which in many respects seems to parallel our Act, was held to refer to impairment of one's physical efficiency. *Burbage* v. *Lee,* (1915) 87 N. J. L. 36, 93 Atl. 859; *De Zeng Standard Co.* v. *Pressey,* (1914) 86 N. J. L. 496, 92 Atl. 278, 279. In the last named case the point was urged that there cannot be a statutory "disability" when it appears that the earnings of the claimant had not been impaired. In answer the New Jersey court said: "It may well be that for a time an injured employee might be able to earn the same wages as before the accident; but, as we read the act, the disability intended thereby is a disability due to loss of a member or part of a member or a function, rather than the mere loss of earning power. Even if this were not so, it does not follow that the injured employee had not sustained a distinct loss of earning power in the near or not remote future and for which the award is intended to compensate. If it were a question of damages at common law, the elements of damage would consist of present loss of wages, probable future loss of wages, pain and suffering, and temporary or permanent disability, which loss the jury would be at liberty to assess quite independently of the fact that the plaintiff was earning the same wages, except so far as that fact might be evidential with regard to the extent of the disability." In the *Burbage* case it was held that the mere fact that a claimant was employed at the same work and the same wages as before the injury will not disentitle him to compensation under the act if his physical efficiency has been substantially

impaired. A somewhat similar position was taken by the Kansas Court in the case of *Gailey* v. *Peet Bros. Mfg. Co.*, (1916) 98 Kan. 53, 157 Pac. 431, although the statute in that state makes use of the expression "partial incapacity for work" instead of "disability". In that case the employee, who, as a result of an injury to his fingers, could not tightly close them in his hand, and was thereby rendered less able to perform his work, was held to be partially incapacitated from performing labor. The case also held that the employee did not lose his right to compensation under the act by remaining in the employment of his master at his former wages.

From a consideration of the above cases, we find that, regardless of the expression used, in cases not coming within a specific percentage rating, both the New Jersey and Kansas acts have been construed so that the claimant might receive compensation commensurate with his actual disability—keeping in view the effect of the injury upon his future ability to work. In other words, in determining the percentum of injury in such cases, the courts have recognized the fact that a laborer, in an endeavor to adequately provide for his family, may earn the same wages for a time after the injury as he did before, but that the injury will in due time exact its toll. A desire to work and get ahead should not work to the disadvantage of a worthy claimant. He must look to the future. The fact that claimant was fortunate enough to get in more days work per week (though at less pay) than he had prior to the injury, and thereby earn something near what he had prior to the accident, should have no bearing on the case, in so far as determining the percentum of "disability" is concerned.

An added reason for such position appears in section 40, Chapter 71, Acts 1929, providing that a claim in such cases cannot be re-opened after the expiration of one year from the date of the last payment of any given award. While employment is purely optional with the employer, if wages were indicative of the degree of disability, he could, in many cases, afford to take the injured employee back and possibly pay him a little more than his services were actually worth, and later dispense with such services altogether. While the record in the instant case does not disclose such action on the part of the

employer, a letter does appear therein to the effect that the employee, shortly after the setting aside of the award, was without work and unable to get work.

In ascertaining the degree of the physical impairment, the occupation to be considered in making a disability rating is usually that at which the employee was engaged at the time of the injury. 1 Honnold on Workmen's Comp. 597.

It also appears from the record that the facts set forth in the inspector's report were substantially the same as those which were before the Commissioner at the time of his finding of a 50% permanent disability, the only difference being a slight increase in the earnings per month, due to an advance in daily wages.

In view of the foregoing principles, and the language used in our statute, which seems to grant compensation on "disability", or the impairment of one's physical efficiency based on employment in which the applicant was performing service at the time of his injury, we feel that the report was insufficient to warrant the Commissioner's action.

The action of the Commissioner will be reversed, and the case remanded with directions to pay the compensation under the 50% permanent disability award.

*Reversed; judgment here.*