MICHAEL KUBACHKA

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER

*and*

WINDSOR POWER HOUSE COAL COMPANY

(No. 14458)

Decided October 23, 1979.

---

*McCamic & McCamic, William E. Parsons, II,* for appellant.

*Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty and J. Randolph Query* for Windsor Power House Coal Co.

*John E. Dorsey, Legal Division, Workmen's Comp. Comm.,* for Workmen's Compensation Com'r.

MILLER, JUSTICE:

Claimant, Michael Kubachka, appeals an adverse decision of the Workmen's Compensation Appeal Board, which affirms the finding of both the Workmen's Compensation Commissioner and the Occupational Pneumoconiosis Board that he has occupational pneumoconiosis, but has no disability, because there is no "pulmonary functional impairment of his capacity to work due to the disease."

We reverse on two grounds. First, there is no requirement that, in order to obtain a disability award for occupational pneumoconiosis, the disease must have impaired the claimant's capacity to work. Second, the claimant demonstrated sufficient evidence of pulmonary impairment caused by the disease to prove his entitlement to a disability award under *Persiani v. State Workmen's Compensation Commissioner,* _____ W. Va. _____, 248 S.E.2d 844 (1978).

I

Occupational pneumoconiosis is defined by W. Va. Code, 23-4-1, as "[A] disease of the lungs caused by the inhalation of minute particles of dust over a period of time due to causes and conditions arising out of and in the course of the employment. . . ." The disease includes a variety of pulmonary ailments, since W. Va. Code, 23-4-

---

[1]W. Va. Code, 23-4-1, in material part states:

"The term 'occupational pneumoconiosis' shall include, but shall not be limited to, such diseases as silicosis, anthracosilicosis, coal worker's pneumoconiosis, commonly known as black lung or miner's asthma, silico-tuberculosis (silicosis accompanied by active tuberculosis of the lungs), coal worker's pneumoconiosis accompanied by active tuberculosis of the lungs, asbestosis, siderosis, anthrax and any and all other dust diseases of the lungs and conditions and diseases caused by occupational pneumoconiosis which are not specifically designated herein meeting the definition of occupational pneumoconiosis set forth in the immediately preceding sentence."

1, identifies a number of pulmonary conditions encompassed within the term "occupational pneumoconiosis."[1]

W. Va. Code, 23-4-6a, provides: "If an employee is found to be permanently disabled due to occupational pneumoconiosis ... the percentage of permanent disability shall be determined ... in the manner and at the same rate. ..." as set out in W. Va. Code, 23-4-6(d), (e), (g), (h), (i), (j), (k), (m), and (n). The Occupational Pneumoconiosis Board, basing its decision on its examination of the claimant and submitted reports, makes a medical determination as to whether the claimant has occupational pneumoconiosis and, if so, "the percent of permanent disability resulting therefrom." W. Va. Code, 23-4-8c.

While not applicable to this case, W. Va. Code, 23-4-8c, creates a rebuttable presumption. If the claimant suffers from a chronic respiratory disability and has been exposed in his employment to the hazard of inhaling minute particles of dust for a period of ten years during the fifteen years immediately preceding the date of his last exposure,[2] it is presumed that he is suffering from occupational pneumoconiosis. This Code section at least suggests that a chronic respiratory disability resulting from prolonged exposure is sufficient to constitute the disease of occupational pneumoconiosis.

The central issue in this case is not whether the claimant suffers from the disease of occupational pneumoconiosis, since the medical finding is that he has the disease. Rather, the issue is what must be shown in order to obtain a disability rating, and specifically whether the claimant must show that his resulting disability impairs his capacity to work. The Occupational Pneumoconiosis Board did not find that the claimant suffers no impair-

---

[2]The claimant here did not meet the ten out of last fifteen years requirement. The record reveals that the claimant's first employment in coal mines was in 1939–1940. He was again employed in coal mining by Windsor Coal Company from August 11, 1950, to June 30, 1959, and again from November 25, 1964, to September 6, 1974, when he stopped working upon suffering a heart attack.

ment, but rather that there is no impairment *of his capacity to work.*

It is important to recognize that, for purposes of a permanent disability rating, occupational pneumoconiosis is treated as any other injury. W. Va. Code, 23-4-1, states: "For purposes of this chapter the terms 'injury' and 'personal injury' shall include occupational pneumoconiosis. . . ." Thus, from a medical standpoint, the disease must be given a disability rating commensurate with the usual standards for ascertaining the extent of permanent disability.

We have traditionally held that impairment of the capacity to work is not the sole standard for determining the right to a permanent disability award. In *Posey v. State Workmen's Compensation Commissioner,* \_\_\_\_ W. Va. \_\_\_\_, 201 S.E.2d 102 (1973), we discussed the two major theories that underpin the right to receive disability awards under Workmen's Compensation statutes:

> "In attempting to achieve a method of compensating an injured workman to the percent of disability suffered, American courts have used primarily two concepts—the 'whole man' theory and the theory of loss of earning capacity. The former concept involves an allocation of a percentage of impairment for the loss of use of a part of the body and an award to the disabled claimant of that percentage of permanent disability. The other principal theory takes into consideration the extent to which the injury impairs earning capacity. In many jurisdictions elements of both theories are utilized in conjunction with such other considerations as loss of efficiency both in work and in normal life activities. 2 Larson, Workmen's Compensation Law 7-17 (1970); 58 Am.Jur., Workmen's Compensation, Section 281, page 777; 99 C.J.S. Workmen's Compensation § 296, pages 1033–1046.

> "This jurisdiction has been committed principally to the so-called 'whole man' theory, although there appears to have been some deviation from that theory in some of our cases. 2

Larson, Workmen's Compensation Law 12 (1970)."
[_____ W. Va. at _____, 201 S.E.2d at 105–106]

As demonstrated by Syllabus Point 2 of *Posey, supra,* this Court is committed to a rule which gives consideration not only to the impairment of the claimant's capacity to work, but also to the impairment of his efficiency at work and of his normal pursuits:

> "In determining the percentage of disability for a workmen's compensation claimant, consideration must be given to the impairment of the employee's earning capacity, to the effect of possible impairment of his efficiency at work, and the impairment to the normal pursuit of everyday living."

Much the same result was reached in the earlier case of *Walk v. State Compensation Commissioner,* 134 W. Va. 223, 58 S.E.2d 791 (1950), where the claimant had sustained a genital injury that impaired his sexual functions. In rejecting the employer's contention that the injury was not entitled to a permanent disability award in the absence of a showing of impairment of earning capacity, we stated:

> "Though the principal object of workmen's compensation statutes is to compensate an injured employee for loss of earning capacity, this Court has said that the purpose of the workmen's compensation statute of this State is to compensate an employee for impairment of his physical efficiency, *Ashworth v. State Compensation Commissioner,* 117 W. Va. 73, 183 S.E. 912; and that the language of the statute grants compensation for disability or impairment of the physical efficiency of an employee. *Johnson v. State Compensation Commissioner,* 109 W. Va. 316, 154 S.E. 766. Though loss or impairment of earning capacity is, of course, an important element in the determination of the compensability of an injury, neither can properly be held to be the sole consideration upon which such compensability depends."
> [134 W. Va. at 226, 58 S.E.2d at 793]

In discussing the elements to be considered for permanent disability, this Court, in *Kamensky v. State Compensation Commissioner*, 148 W. Va. 258, 134 S.E.2d 582 (1964), stated:

> "The evidence in the instant case is uncontradicted that the facial disfigurement alone would impair his chances or opportunities in obtaining future employment once he had become unemployed again in a general layoff as happened here. This was not taken into consideration by either the Compensation Commissioner or the Appeal Board in their orders awarding him permanent partial disability in this case. Such condition should be considered together with other facts in a case of this nature in determining loss of earning power, one of the objects of the Workmen's Compensation statute. 58 Am.Jur., Workmen's Compensation, Section 274; . . ." [148 W. Va. at 261–62, 134 S.E.2d at 584]

It is thus obvious from our prior holdings that a Workmen's Compensation award for permanent disability cannot be denied a claimant solely on the basis that he has failed to show that occupational pneumoconiosis has impaired his capacity to work.

This conclusion from our prior case law is reinforced by a recent amendment to W. Va. Code, 23-4-6a [1978], whereby the Legislature unmistakably established the right to obtain occupational pneumoconiosis benefits even though the employee suffers no measurable pulmonary impairment from the disease. This amendment reads:

> "[I]f it shall be determined by the commissioner in accordance with the facts in the case and with the advice and recommendation of the occupational pneumoconiosis board that an employee has occupational pneumoconiosis, but without measurable pulmonary impairment therefrom, such employee shall be awarded and paid twenty weeks of benefits at the same benefit rate as hereinabove provided."

The obvious conclusion to be drawn from this amendatory legislation is that if a Workmen's Compensation claimant has a measurable pulmonary impairment resulting from occupational pneumoconiosis, he is entitled to a permanent partial disability award as a consequence of such impairment.

We, therefore, conclude that the Appeal Board, the Commissioner and the Occupational Pneumoconiosis Board committed clear legal error in holding that the claimant, whom they had found to have occupational pneumoconiosis, could not obtain any disability benefits unless he could demonstrate that his capacity to work had been impaired. For this reason, the findings of the Appeal Board must be reversed.

## II

The claimant further asserts that the Appeal Board, the Commissioner and the Occupational Pneumoconiosis Board failed to consider the medical evidence relating to his disability under the standards set in the single syllabus of *Persiani v. State Workmen's Compensation Commissioner,* _____ W. Va. _____, 248 S.E.2d 844 (1978), which we quote in its material part:

> "In claims under the Workmen's Compensation Act, *W. Va. Code,* 23-1-1 [1971], *et seq.* for disability resulting from occupational pneumoconiosis, ... the Commissioner is required to apply the liberality rule in the same manner as in other cases involving the evaluation of medical evidence, and while he is not required under the liberality rule to accept any particular result as dispositive of the case, he may not arbitrarily choose to disbelieve any competent medical testimony in its entirety or to exclude it from consideration altogether, absent credible evidence in the record that the suspect testimony is unreliable."

The claimant is now 60 years old. The medical reports that were available to the Occupational Pneumoconiosis Board are conflicting. The records of the claimant's per-

sonal physician, Dr. S. S. Bhullar, contain the results of chest x-rays, pulmonary function tests, and an arterial blood gas study performed by the Bellaire Clinic Department of Respiratory Therapy, Pulmonary Function Lab, Bellaire, Ohio. A 1967 chest x-ray, according to Dr. Bhullar, indicated "some fibrosis in the lungs." More recent x-rays were reported by Dr. Bhullar to be "relatively normal." The pulmonary function tests, performed in 1975, measured a one-second forced expiratory volume of 40% of predicted capacity, and a maximum voluntary ventilation of 23% of normal. The arterial blood gas study performed at the same time produced results within the "lower limits of normal." On the basis of these tests and upon monthly appointments with the claimant over a period of four years, Dr. Bhullar diagnosed the claimant to be suffering from "advanced, chronic, obstructive lung disease." Dr. Bhullar found the claimant to be totally disabled, and attributed 50% of his impairment to a pulmonary condition and the remaining 50% to heart disease.

A second set of pulmonary function tests were administered in 1977 at the Bellaire City Hospital. These tests measured a one-second forced expiratory volume of 53% of predicted capacity and a maximum voluntary ventilation of 54% of normal. Dr. Bhullar attributed the degree of improvement since the 1975 tests to the claimant's abstinence from cigarette smoking. The doctor diagnosed the claimant's 1977 condition to be "moderate, chronic, obstructive lung disease," and again found the claimant to be totally disabled, 40% from a pulmonary condition and 60% from heart disease.

In April of 1976 the claimant was examined by the Occupational Pneumoconiosis Board. Pulmonary function tests taken at the Board's request at the Cardio-Pulmonary Laboratory, Charleston Area Medical Center—Memorial Division, produced one measurement of forced expiratory volume of 86% of the predicted normal, and a maximum voluntary ventilation of 53% of the predicted normal. The 86% forced expiratory volume

reading was identified as non-reproducible,[3] but no other readings were provided. X-ray films were reported by Dr. Ralph J. Jones and Dr. W. G. Hayes as showing no evidence of occupational pneumoconiosis. Dr. Hayes and Dr. Jones concluded that the claimant's disability results from a heart condition described as "anteriosclerotic cardiovascular disease with myocardial infarction and anginal syndrome."

The three physician members of the Occupational Pneumoconiosis Board disagreed with the x-ray interpretations and found that the films revealed a "very fine irregular fibrosis at the lung bases with some association of the diaphragms and increased lucency of the lung fields, indicating an occupational pneumoconiosis, with associated emphysema." Of the conflicting pulmonary function studies, the Occupational Pneumoconiosis Board found the test results of the Charleston Area Medical Center, though non-reproducible, to be more reliable than those of the Bellaire Clinic.

From the foregoing summaries of medical evidence, viewed in the light of the *Persiani* standard, it is clear that the claimant has produced sufficient evidence to show that he has a measurable pulmonary impairment arising from the disease of occupational pneumoconiosis, and is entitled to receive a permanent partial disability award.

We, therefore, reverse the order of the Workmen's Compensation Appeal Board and remand the case to the Commissioner for further proceedings in accordance with the principles set forth herein.

*Reversed and remanded.*

---

[3]The term "non-reproducible" appears to mean that the same test result cannot be duplicated on repeating the test. At the protest hearing, Dr. Pushkin of the Occupational Pneumoconiosis Board explained: "It only means that they were not able to do the same thing again. . . ."