LINDSEY BLEVINS *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9687)

Submitted January 30, 1945. Decided February 27, 1945.

*W. T. O'Farrell* and *Brown, Jackson & Knight,* for appellant.

*Ira P. Hager,* for appellee.

Fox, Judge:

The employer, Carbon Fuel Company, appeals from an order of the Workmen's Compensation Appeal Board entered on the 7th of October, 1944, affirming an order of the State Compensation Commissioner, made on the 17th day of August, 1944, by which claimant was awarded compensation for life upon the basis of a permanent total disability.

Claimant was injured by a slate fall on July 27, 1938. He went to a hospital five days later, and was there examined by Dr. J. Ross Hunter, whose report on his examination contains the following:

> "His chief complaint was pain in his left loin. There was no evidence of injury to the cord, and no evidence of internal injury. There was tenderness over the 4th lumbar vertebra without deformity. X-ray picture made August 2, showed a fracture of the left transverse process of the third lumbar vertebra with little or no displacement of the fragments."

Claimant filed his application for compensation on September 15, 1938, and he was paid compensation on a temporary basis for a total of 70 2/10 weeks, ending on November 30, 1939. He was referred to Dr. R. L. Anderson for examination, and was examined on May 9, and report thereof later made, in which it appears that:

> "Re-examination of the lumbar spine in two positions shows the fragments of the fracture referred to in the left transverse process of the third

lumbar vertebra has healed firmly with no displacement of the fragments. The alignment of the spine is good in both planes."

Dr. Anderson gave as his opinion that the man was somewhat disabled, but that he believed most of his disability was due to arthritic changes in the spine, and suggested that he have his teeth attended to, tonsils removed, and that some manipulation of his back would help his condition. Dr. Anderson made a further report, based on this same examination, on June 1, 1939, in which he says:

"This man sustained a comparatively mild fracture of the spine, that is, a fracture of the transverse process. He also sustained, simultaneously, a rather severe back strain. At the present time the X-ray also shows hypertrophical lipping. He is not able to work at the present time, but I believe that much of his disability is temporary."

He then advised that his teeth and tonsils have attention, and that manipulation of the spine would help his condition. He also stated: "The partial permanent disability in this case is 15%."

On August 9, 1939, claimant was again examined by Dr. Anderson, and in his report thereof, he says:

"It is believed that this man has improved some since the last examination. It is still believed, however, that he would be benefited by the removal of crowned teeth and by the manipulation of his back, since he still has stiffness of the lower erector spinae muscle group."

He further stated that he did not believe he had reached· his maximum degree of improvement, and that his disability rating should be deferred.

An elaborate report of claimant's condition was made by the medical examiner for the Compensation Department, Dr. Laslie, under date of October 6, 1939. At that time claimant had been paid compensation for 59 3/7 weeks, and it was recommended that he be ordered to again report to Dr. Anderson. He did not so report, and

on November 28, 1939, he was advised by the medical examiner that until such time as he should "signify his willingness to cooperate with his attending physician, and have reported for this treatment no further payments of compensation can be made." On December 1, 1939, claimant returned to work, and performed light work until July, 1940, since which time he has not done any work.

Claimant was again referred to Dr. Anderson on May 8, 1940, and was again examined by him on the 27th of that month, and report made on June 5 following. At that time claimant had been paid compensation for 70 2/7 weeks. Dr. Anderson gave as his opinion that, "This man has been fully compensated. No treatment is recommended at the present time." Following this report, on June 10, 1940, claimant's disability was ascertained by the compensation commissioner to be 17 3/4 partial permanent disability entitling him to compensation for 71 weeks at $16.00 per week. Having been paid $1,124.57 under his temporary status, he was paid the balance due him of $11.43. In a letter of that date, claimant was advised of his right to file objections to the award within thirty days, and protest thereto was made on June 18, 1940, but the same does not appear to have been followed up.

On December 2, 1940, claimant filed a petition asking for a reopening of his claim. In it he recites the award of 71 weeks aforesaid, says his disability has increased since the last award, and that "he is now totally and permanently disabled and not able to do any manual labor at all in or about the mines." He attached to this petition a medical report made by Dr. H. D. Hatfield, which he asked to be considered. Dr. Hatfield's report is dated November 26, 1940, covers his then condition in considerable detail, and ends his report with this statement:

"My judgment at present is that this man is suffering from disability sustained on date given. A fusion—or better—spinal graft could very well reclaim him from permanent total disability."

Following the filing of the petition, and Dr. Hatfield's report, claimant was again, two weeks later, referred to Dr. Anderson, who was advised of the substance of the Hatfield report. Dr. Anderson's report on this examination was made on December 31. In it he says:

"This man is suffering from hypertropic arthritis of the spine. I do not believe that this injury is responsible for arthritic condition."

About this time claimant was referred to Dr. Archer A. Wilson for a neurological examination. Dr. Wilson's report is dated December 21, 1940, and under the heading "Impression", he says:

"This claimant has clinical and X-ray evidence of a herniation of an intervertebral disc between the 4th and 5th lumbar bodies. This is assumed to be traumatic in origin since there was bone damage done at the time of his trauma and this root type pain which he now has, has been present since the injury. For relief of his pain it is recommended that a laminectomy be done and the herniated disc removed."

The operation recommended by Dr. Wilson was performed on January 28, 1941, and claimant was discharged from the hospital on February 16 following.

On March 19, 1941, claimant filed another petition asking that his case be reopened. In this petition he represented that he had been paid for a period of 71 weeks, and had returned to light work and continued to perform such work until July 19, 1940, when his disability had progressed to such an extent that he had to quit, and that "since that time he has been totally disabled and has submitted to an operation, which operation was performed by Dr. A. A. Wilson, Charleston, West Virginia." He asked for accrued compensation due him from July 19, 1940. The prayer of his petition was denied on March 25, 1941, and he was notified of his right to protest within thirty days, and protest was made within that period and a hearing held,

although we do not understand that a hearing on a petition to reopen is proper.

On May 14, 1941, claimant was examined by Dr. J. A. Stumbo. From his report it appears that the examination made by him showed the scar made by the operation, and reported that claimant has a spondylolisthesis, and that there were hypertrophic changes in the vertebral column. Dr. Stumbo says: "This claimant, in my opinion, is totally and permanently disabled, and in need of further treatment, such as a Taylor back brace." On April 24, 1941, Dr. Hatfield made a further examination and report. He says:

"Mr. Blevins, notwithstanding the operative procedure that has given him some comfort from pain, still has a 100 per cent permanent total disability for manual labor—that type of labor that he was capable of doing and performing at the time he sustained the injury."

On July 24, 1941, claimant filed what is termed an amended and supplemental petition to have his claim reopened, to which he attached the reports of Dr. Hatfield and Dr. Stumbo above noted. In this petition he says:

"Your petitioner alleges that he is now totally and permanently disabled and has been since he ceased to work; and that he is entitled to a rating and to be awarded compensation for the remainder of his life."

On December 13, 1941, claimant was examined by Dr. C. W. Stallard, from whose report it appears:

"X-ray examination showed a defect in the region of the fourth and fifth lumbar vertebrae where laminectomy was performed. There were also some areas of lipiodol noted throughout the spinal column. The contour of the vertebrae was normal. There was no marked evidence of hypertrophic arthritis.

"Comments: At the present time this patient has the clinical signs and symptoms of permanent

cord damage and he is not able to do any type of heavy manual labor. In my opinion, he will never be able to do so."

On December 20, 1941, claimant was again examined by Dr. Wilson, who reported that:

"The neurological examination does not disclose any evidence of an organic neurological lesion. It is the opinion of this examiner that he very greatly exaggerated his symptoms and claims of disability and his claimed sensory disturbance amply bears this fact out.• It is not felt that his laminectomy should be disabling to an extent in excess of 20%."

In the report made by Dr. Wilson under date of January 30, 1942, he says:

"The patient has apparently had a very satisfactory recovery from the laminectomy for removal of intervertebral disk. In view of the fact that there is no known organic lesion of traumatic origin which will produce the sensory complaint complained of and in view of the absence of pathologic findings other than noted above, it is my opinion that the permanent partial disability in this case does not exceed 20%."

The hearings on the claim, held at different points in the State, continued at intervals until June, 1942, and the testimony of claimant, Dr. Hatfield and Dr. Stallard was taken. On July 27, 1942, compensation for 88 weeks was awarded, on a basis of 22% disability rating, subject to payments theretofore made. An appeal from this award to the compensation appeal board was taken, resulting in a reversal of the commissioner's order and a remand of the case to the commissioner, with direction to pay claimant on a 45% partial permanent disability rating, and that he be hospitalized and treated as advised by Doctors Hatfield and Stallard. This order was made on October 10, 1942. On November 12, the compensation commissioner awarded claimant compensation for 180 weeks, based on

a 45% disability rating, subject to prior payments made. No appeal from this award was prosecuted.

On May 13, 1943, claimant filed a third petition asking that his claim be reopened, and that an additional award of compensation be made, based on a total permanent disability rating, again alleging that his condition has progressively grown worse, and that he was totally and permanently disabled. There is attached to this petition a letter written by Dr. E. H. Hedrick, dated May 11, 1943, in which he says:

> "X-ray Examination: Reveals a defect in the region of the 4th and 5th lumbar vertebrae where laminectomy was performed. There were also some areas of lipiodol noted throughout the spinal column. The contour of the *vertebrea* was normal. There was no marked evidence of hypertrophic arthritis."

He then states:

> "I believe this man suffered an injury to the spinal cord at the time of the accident and I do not believe that his condition will improve in the future. He is absolutely unable to do any manual labor in or around the mines. He even has difficulty in dressing and undressing himself and is practically helpless as far as getting around and being able to do things, therefore I do not hesitate to recommend a total permement disability in this case."

There was also filed with this petition a letter from Dr. Hatfield, in which he says:

> "This man is 100% disabled from doing manual labor and would be prevented from doing any other type of labor due to the mental attention that would be given the pain from which he is suffering."

A report made by Dr. J. H. Steenberger, filed with the petition, states that claimant's primary injury is of such nature that it involves the root nerves in the sacral and

lumbar region, and the only hope for the man was to fix the lumbar spine by use of a spinal graft. "It would be an impossibility to do a fusion of the vertebrae at the present time, due to the fact that some of the spinous processes have been removed in the past operation." He then concludes:

> "Let me say in closing that this man, Mr. Lindsey Blevins, is a 100 percent disabled individual from doing manual labor and would be prevented from doing any type of labor, due to the mental attention that would be given the pain, from which he is suffering."

The claimant was then referred to Dr. H. A. Swart, who, on June 16, 1943, made a report in which he says:

> "In conclusion, I may say that this man's chief difficulty now is due to weakness of the back following laminectomy. I would suggest that he be fitted with a Taylor back brace and be given a total disability award of 55%, part of which already has been paid. I do not think he is a good candidate for operative fixation."

The claimant was furnished the spinal brace recommended, and on June 28, 1943, was awarded an additional forty weeks compensation, based on a permanent partial disability rating of 55% or an increase of 10%. This award was paid without protest from either claimant or employer, and, under the terms of the award, payments ceased on December 4, 1943.

Of course, we have not attempted to do more than quote the conclusions of the several physicians. Each of them goes into lengthy detail as to claimant's condition. But without this we have gone into a tedious, and what may be termed painful, detail as to the treatment received by this claimant, in an effort to ascertain the compensation to which he was entitled. The period of his examination and treatment, up to the date of the 55% award, covered practically five years, and he was subjected to examination by numerous physicians, all of whom have a high

standing in their profession, and some with reputations extending far beyond the community in which they practice their profession. It is inconceivable to us that these eminent physicians overlooked anything in connection with plaintiff's injury prior to the time the award of June 28, 1943, was made; and certainly enough time had elapsed to warrant the commissioner in making a permanent and final award, and this we think he did. Whether the award made amply compensated claimant we do not know; but if not, he had his remedy by an appeal to the appeal board, and to this Court, for the correction of any injustice. He did not elect to make such appeal and accepted the award.

Notwithstanding the fact that this should be considered as a final award, it did not foreclose a further award should the necessary statutory showing therefor be made. There was continuing jurisdiction in the compensation commissioner to make further awards, and that jurisdiction has existed from the date that the Workmen's Compensation Law was first enacted in this State. Section 40 of Chapter 10, Acts of the Legislature, 1913, provides:

> "The power and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto, as, in its opinion, may be justified."

At that time the administration of the Workmen's Compensation Fund was entrusted to the Public Service Commission.

By Chapter 9, Acts of the Legislature, 1915, the administration of the Workmen's Compensation Fund, was entrusted to a compensation commissioner, and by Section 40 of that act it was provided:

> "The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time make such modification or change with respect of former findings or orders with respect thereof, as, in his opinion, may be justified."

Section 40 of Chapter 71, Acts of the Legislature, 1929, provides:

"The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time, after due notice to the employer, make such modification or change with respect of former findings or orders with respect thereto as in his opinion may be justified; provided, no further award may be made except, within one year after the death of an employee in a fatal case, or, except in case of non-fatal injuries within two years after payment for temporary disability shall have ceased and within one year after the commissioner shall have made the last payment in any permanent disability case."

Section 16, Chapter 78, Acts of the Legislature, 1935, amending the compensation law, provides:

"The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time, after due notice to the employer, make such modification or changes with respect to former findings or orders as may be justified: Provided, That no further award may be made in fatal cases except within two years after the death of the employee, or, in cases of non-fatal injuries except within three years after payment for temporary disability shall have ceased and within one year after the commissioner shall have made the last payment in any permanent disability case * * *."

The Workmen's Compensation Law was again amended by Section 16, Article 4, Chapter 137, Acts of the Legislature, 1939. Section 16 provides:

"The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time, after due notice to the employer, make such modifications or changes with respect to former findings or orders as may be justified",

and contains the proviso contained in the 1935 Act, and

further provides that no award shall be made in either fatal or non-fatal cases arising out of injuries occurring prior to March 7, 1929, unless application therefore be made on or before September 15, 1939. The law was further amended by adding two sections 1-(a) and 1-(b) to Article 5, under the head of "Review and Appeal". These sections read:

"Sec. 1-(a)  In any case wherein an injured employee makes application in writing for a further adjustment of his claim under the provisions of section sixteen, article four, of this chapter, and such application discloses cause for a further adjustment thereof, the commissioner shall, after due notice to the employer, make such modifications or changes with respect to former findings or orders in such claim as may be justified, and any party dissatisfied with any such modification or change so made by the commissioner, shall, upon proper and timely objection, be entitled to a hearing, as provided in section one of this article."

"Sec. 1-(b)  If, however, in any case in which application for further adjustment of a claim is filed under the next preceding section, it shall appear to the commissioner that such application fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such claimant to greater benefits than he has already received, the commissioner shall, within sixty days from the receipt of such application, notify the claimant and the employer that such application fails to establish a prima facie cause for reopening the claim. Such notice shall be in writing and shall state the time allowed for appeal to the appeal board from such decision of the commissioner. The claimant may, within thirty days after receipt of such notice, apply to the appeal board for a review of such decision."

Thus it is that, as the statute now exists, the compensation commissioner's continuing jurisdiction is limited in the respects indicated above. While that jurisdiction ex-

ists, and must exist, if additional compensation is to be awarded, growing out of progression or aggravation of an injury, or cases where new facts not theretofore considered have developed, yet that jurisdiction is restricted by the provisions of the statute above quoted. Of course, there can be no doubt that if the Legislature, which in this respect is all-powerful, could create jurisdiction, it may limit the same in any way it chooses. No one has a vested right in any statute, unless it be as to claims arising prior to any change therein, and then only in cases where substantial rights, as distinguished from remedies, are involved. So we think it clear that the continuing jurisdiction provision of the compensation law, contained in the original act, was never intended to be employed or used beyond the limits prescribed by the Legislature.

The statutes quoted above are plain and unambiguous, and we think mean exactly what they say. The restrictions on continuing jurisdiction, laid down thereby, grew out of the holdings of this Court in compensation cases. In *Heaton* v. *Compensation Commissioner,* 106 W. Va. 563, 146 S. E. 368, it was held that a finding of fact by the compensation commissioner should be treated as a finding of a judge or the verdict of a jury, and should not as a general rule be set aside, if there was substantial evidence to support it. In *Kincannon* v. *Ott, Commissioner,* 108 W. Va. 428, 151 S. E. 311, there is the same holding. In *Johnson* v. *Compensation Commissioner,* 109 W. Va. 316, 154 S. E. 766, the two cases above cited are referred to, and it is said in the body of the opinion:

> "Following this analogy, a finding, once made, should not be set aside by the Commissioner, except for good cause. The mere fact that the Commissioner's jurisdiction is 'continuing' should not be interpreted as a license to set aside a finding on insufficient evidence. Once having acted, his finding must stand in the absence of some good reason for setting it aside."

In *Nichols* v. *Compensation Commissioner,* 111 W. Va. 34, 160 S. E. 854, the Court said:

"While it is true that the commissioner has continuing jurisdiction in these matters, Code 1931, 23-4-16, it does not follow that the commissioner has authority under the statute, months after the final decision, to reopen and reconsider a case on facts the same or substantially the same as those considered by him on the original hearing. There must be an end of these matters * * *."

In *Watkins* v. *State Compensation Commissioner,* 111 W. Va. 126, 161 S. E. 20, it was held:

"Mandamus will not lie to require the reopening of a claim for compensation, formerly adjudicated, on the ground of newly discovered evidence, unless such a showing is made as would, in the opinion of the court, call for a favorable finding by the commissioner."

In *Burdette* v. *State Compensation Commissioner,* 111 W. Va. 299, 161 S. E. 556, it was held:

"The state compensation commissioner does not have jurisdiction months after a claim for compensation has been definitely and finally closed, to reconsider the claim on evidence substantially the same as that before him when the claim was closed."

To the same effect is *Myers* v. *State Compensation Commissioner,* 113 W. Va. 316, 167 S. E. 740. In *Bell* v. *State Compensation Commissioner,* 113 W. Va. 571, 169 S. E. 162, this Court held:

"Before a claimant, who has received an award, can have a case, which has been finally and definitely closed, re-opened, he must show an aggravated condition of the old injury not taken into account on the former hearing, or a new claim growing out of the same."

It will be seen, therefore, that the limitation on the continuing jurisdiction of the commissioner now provided for in our statute, had its basis in the decisions of this

Court, made prior to the enactment of Chapter 137, Acts of the Legislature, 1939, so that the subsequent decisions of this Court are in line with the decisions above cited, and the statute as well. In *Mason* v. *Workmen's Compensation Appeal Board,* 121 W. Va. 444, 4 S. E. 2d 791, decided in September, 1939, we held that it was not error for the commissioner to decline to reopen a case on motion of the claimant, on the ground of aggravation of the injury, unless there was a *prima facie* showing of an aggravated condition of the injury following the last award; and in *Reed* v. *Compensation Commissioner,* 124 W. Va. 37, 18 S. E. 2d 793, we held:

> "After an order of the Workmen's Compensation Commissioner determining a claimant's disability has become final, the case cannot be reopened except by the showing of 'a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the Commissioner in his former findings, and which would entitle such claimant to greater benefits than he has already received * * *.' "

Chapter 137, Article 5, Section 1-(b), Acts of the Legislature, 1939, is relied upon as a basis for this holding. To the same effect is the case of *Felty* v. *Compensation Commissioner,* 124 W. Va. 75, 19 S. E. 2d 90.

At the present term of this Court, we have had before us three cases involving, to a greater or lesser degree, the question of the continuing jurisdiction of the commissioner, and the right of the commissioner to make awards in the absence of a showing of aggravation or progression, or some new fact entitling claimant to an increased award. These are: *Johnson* v. *State Compensation Commissioner; Bitten* v. *State Compensation Commissioner;* and *Pounds* v. *State Compensation Commissioner.* In each of these cases we have been compelled to hold that further compensation could not be awarded, because of the failure to make the showing required by the statute.

In this connection, it is not amiss to say that the Workmen's Compensation Law is a creature of the statute. That

statute was enacted by our Legislature under the police power of the State, the delegation of which is vested in that department of our State Government. This Court, as well as all other courts, is lacking in power to apply the police power of the State, in the absence of legislative authority. It is purely a legislative function. This being true, when the Legislature, in plain language, prescribes what shall be required as a prerequisite to the allowance of compensation, or an increase of compensation, this Court considers itself bound by the legislative action, and the compensation commissioner and the compensation appeal board should feel likewise. This is a government of law, and in its administration, no administrative official or board, nor any court, should ever go beyond a plain statute, legally enacted. Appeals from the compensation commissioner in the early stages of the law, and more recently from the compensation appeal board, to this Court, are a part of the statutory method prescribed for the final ascertainment of compensation, to which injured persons may be entitled. This Court did not seek jurisdiction in such cases, and at one time it was seriously doubted whether, being an administrative matter, this Court, which can only deal with matters judicial in character, had the right, under the Constitution, to entertain such appeals. That doubt, however, has been resolved in favor of considering this character of cases, and they are coming to this Court in increasing numbers. With every purpose to deal liberally with such cases, as our opinions over a long period of years will attest, we cannot ignore the plain provisions of the statute. If those provisions are unjust to claimants, or to employers, the remedy is with the Legislature; we can only interpret and apply the law as the Legislature enacts it. Therefore, when a case is presented to us, wherein a claimant seeking additional compensation, after a final award made on his claim, fails to show progression or aggravation, or some new fact not theretofore considered, which would entitle him to increased compensation, as the statute plainly requires, we have no alternative, and cannot approve an award. The fact that the compensation

commissioner and appeal board may conceive that awards of compensation may be made upon an experimental basis, that is, to allow a permanent award of compensation with the idea that, on the same evidence, they can adjust their award at a later date, does not justify this Court, when a case is appealed to it, in overriding the plain provisions of the statute, and in upholding such a procedure. More than once we have plainly stated that this cannot be done under the statute as it now stands. After the period within which a temporary award can be made, as provided by the statute, has passed, and the commissioner makes a permanent award, that award must stand as a final settlement of the claim, unless, subsequent thereto, a showing is made of aggravation or progression, or some new fact not theretofore considered entitling claimant to a further award.

The procedure which the statute prescribes and permits for the allowance of compensation in cases of non-fatal injuries is simply this: When an injury is sustained by an employee, it must first be determined whether it was sustained in the course of and as a result of his employment; and if so found he is entitled to compensation. He may be paid on a temporary basis for fifty-two weeks in ordinary cases, and in certain other cases for as much as seventy-eight weeks. Code, 23-4-6. After the end of these periods, whichever may apply, compensation can only be paid on a permanent basis. The commissioner is not required to fix the permanent compensation immediately after the end of the period for which it has been paid on a temporary basis, but may delay a permanent award until the result of the injury has reached the point where a fair award can be made, when compensation payments may be made to begin at the time payments on a temporary basis end. But when a permanent award is made by the compensation commissioner, and the same is not protested, nor an appeal taken therefrom, the same becomes final, unless it be shown that, subsequent thereto, there has been "a progression or aggravation in the claimant's condition, or some fact or facts which were not theretofore

considered by the commissioner in his former findings, and which would entitle such claimant to greater benefits than he has already received". Acts, 1939, Chapter 137, Article 4, Section 1-(b). That which appears on the record at the time a permanent award is made will be treated as having been considered by the commissioner. Cases have come to the notice of this Court where failure to observe this procedure has resulted in grave injustice to claimants, and to avoid such injustice is one of the reasons for this lengthy opinion.

After the award of June 28, 1943, based on a permanent partial disability of 55%, counsel for petitioner on March 9, 1944, wrote a letter to the State Compensation Commissioner, with which he inclosed medical reports of then recent examinations of claimant made by Dr. E. H. Hedrick, Dr. Victor L. Wetherby, Dr. F. M. Picklesimer, and Dr. V. A. Deason. In his letter, he states:

> "All four of these doctors state emphatically that this claimant has a total, permanent disability. He has previously been paid a 55% permanent disability. Therefore, he has not been adequately compensated.

> "We therefore have to request that his claim for compensation be reopened and that he be made an additional award, based upon total, permanent disability."

This letter appears to have been treated as an application for the reopening of the case, and while not a formal petition, it was sufficient under the rule laid down in *Wilkins* v. *State Compensation Commissioner*, 120 W. Va. 424, 198 S. E. 869.

Dr. Hedrick was the only one of the physicians last above mentioned who had previously examined claimant, and he fails to state any new fact, nor does he state that claimant's condition had become aggravated or had progressed. All that he says is: "That his condition has not improved over many months; and that from the physical examination and X-ray findings it would appear that he will never make

any improvement." He recommended a total permanent disability award, as he had done in his former report, filed prior to the award of 55% disability.. The other three physicians could, of course, only report as to the then condition of claimant. One of them expressed no opinion except that he was totally and permanently disabled.. Dr. Picklesimer made this statement:

> "There is a left inguinal hernia which he says did not exist until the injury. There is some decrease to sensations to pin prick in the left leg and the left leg appears smaller than the right. X-ray picture AP and lateral of the lumbar spine reveals a communited fracture of the 5th lumbar vertebrae. The spinous process of this vertebrae has been fractured. It looks as if part of the laminae of the 4th and 5th have been removed at operation. There seems to be some absorption of the body of the 5th lumbar vertebrae."

Dr. Wetherby also says that claimant had a left inguinal hernia. No attempt is made to show when and how the hernia occurred, and, obviously, no consideration can be given thereto. The only statement as to any new ailment is the suggestion that there is some decrease of sensations of pain in the left leg, and that the left leg appears smaller than the right. After these statements were filed, the case was referred to Dr. Halloran. This was the first time Dr. Halloran had examined claimant, and he gives as his opinion the following:

> "This claimant has received a spine injury. An operation has been performed, apparently for a herniated disc. The claimant has positive findings of a painful back and in my opinion will never be able to do laborious work. At his present age, I would not recommend any surgical procedure as I do not believe he will ever be re-habilitated. In my opinion, this claimant is totally and permanently disabled."

The case was again referred to Dr. Anderson, and on April 21, 1944, he reported that in his opinion:

> "This man has considerable limitation of motion of the spine and apparently has not been particularly relieved by the operation. The partial permanent disability in this case is 60%."

Dr. Anderson made a measurement of claimant's lower limbs, and found them to exactly correspond as to size.

On April 13, 1944, Dr. Wilson made a further report, in which he reiterates a former report, and states that,

> "He has a laminectomy of L 4 and 5 for which this examiner felt on December 20, 1941 a 20% award was adequate."

On these statements, the commissioner made the award of total permanent disability and awarded claimant compensation for life, which action was affirmed by the compensation appeal board, from which actions we granted this appeal.

In our opinion, nothing is shown subsequent to the award of 220 weeks compensation, based on 55% disability, made on June 28, 1943, which warrants us in holding that, since that date, there has been any aggravation or progression of claimant's condition, or that any new fact has been shown which entitles him to a further award. As stated above, not one of the physicians who examined him subsequent to the 55% award, even assumes to say that there had been any aggravation or progression; and we do not think any one of them developed any new fact not considered prior to the former award. It may be that claimant was not given the award to which he was entitled on June 28, 1943. There is much in the record indicating that his condition was at that time one of total and permanent disability, and had the commissioner so held, and his holding been affirmed by the appeal board, it is not at all unlikely that this Court, under the rules followed in such cases, would have permitted the award to stand. But the compensation commissioner did not make such an award. He held that claimant's then condition warranted a 55% disability award, and claimant

accepted that award without protest. A further award can only be made on a showing of aggravation, progression, or some new fact not theretofore considered, and that showing has not been made.

We have not overlooked what may have been the practice in former days of treating only such matters as went to the claimant's right to compensation as being a final disposition of the case, from which an appeal could be taken. 1931 Code, 23-5. But such a practice, if ever warranted by the statute, is now clearly foreclosed by the 1939 Act. Chapter 137, Article 4, Sections 1-(a) and 1-(b).

Therefore, in compliance with the plain provisions of the statute which govern this Court, and should in all cases govern the compensation commissioner and the appeal board, the order of the appeal board, dated October 7, 1944, is reversed, and the case remanded to the compensation commissioner.

*Reversed and remanded.*