RUTH RAMSEY, *Widow* OF GORDON T. RAMSEY

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER, AND
BADGER COAL COMPANY, INC., *A Corporation*

(No. 12904)

Submitted February 18, 1970.      Decided March 17, 1970.

*Stewart McReynolds, Howard Caplan, McReynolds &
Caplan,* for appellant.

*R. L. Theibert,* for appellee.

BROWNING, PRESIDENT:

Gordon T. Ramsey, a fifty-nine year old coal miner,
employed by the Badger Coal Company, hereinafter re-
ferred to as appellant, was on February 22, 1967, pursuing
his usual duties in the bottom of a coal storage bin. He
was working with one Scott who asked Ramsey to get
a file from a tool chest which was situated on the third
floor of the cleaning plant. Scott said Ramsey proceeded
by a walkway to the fourth floor of the plant a distance
he estimated to be one hundred and fifty yards and "as-
sumed" that Ramsey walked down a flight of steps lead-
ing from the fourth floor to the third floor near the bottom
of which was situated the tool chest. A fellow employee,
Fridley, was working on the third floor and stated that
about five minutes before he found Ramsey he heard
"a loud noise and I didn't even know what it was." The

witness had occasion five minutes later to go to the tool chest and found Ramsey about five feet from the tool chest and he stated that he was "right at the bottom of the steps" referring to the steps that led from the fourth floor to the third floor. Ramsey was unconscious. Scott who came to the scene shortly thereafter stated that "there was quite a bit of blood had come out of his nose and this right eye was swelling or had swollen." An ambulance was called, Ramsey was taken to a hospital and was pronounced dead upon arrival. The medical division of the Workmen's Compensation Department called Dr. Ahmet Erinc, a pathologist of Memorial General Hospital of Elkins, and requested him to perform an autopsy. However, the deceased had been embalmed in the meantime. The application of the claimant widow, appellee herein, for benefits was denied upon the ground that her husband's death was "not due to the injury received in the course of and as a result of his employment." The appellee protested, hearings were held and thereafter the commissioner entered an order affirming his previous ruling. On June 30, 1969, the Workmen's Compensation Appeal Board reversed the commissioner's ruling, holding the claim compensable, and on December 8, 1969, this Court granted an appeal.

The controlling issue in this case is not whether the deceased received an injury in the course of and resulting from his employment, that being undisputed, but whether his death was due to trauma or a "heart attack." Dr. Erinc, who performed the autopsy, testified that he found approximately 400 cc's of blood in the chest cavity. He also stated that there "was a hemorrhage behind the pharynx, the upper part of the esophagus. . . ." He testified that those findings indicated that "there was some sort of trauma on the body and produced a rupture laceration and rupture of the lung and produced a hemorrhage in the right chest cavity and a bruise on the face. . . ." He was asked if his findings were consistent with trauma and his answer was, "Most likely." He stated also that he found some arteriosclerosis but "as far as contributing

to death, I don't believe it placed significant at all." He elaborated upon that statement this way: "There was no obstruction or there was no old or fresh or recent myocardial infarction on the heart muscles." He was asked on cross-examination if the deceased did not have "a bad heart condition" and his answer was, "No, he did not have." These questions were asked on redirect and these answers made thereto:

Q. Doctor, in your opinion, what was the cause of death in this case?

A. Internal hemorrhage.

Q. What caused the internal hemorrhage in your opinion?

A. Rupture of the lung.

Q. What caused that?

A. Trauma.

This witness described the swollen cheek to which reference has heretofore been made.

Dr. Joseph E. Martin, Jr., a medical internist, who stated that he had "paid particular attention for the last 18 years to diseases of the chest," had the deceased as a patient in a hospital in Elkins from December 7 through December 10, 1966, that being less than two and one-half months before his death. He stated that he treated deceased "for influenza and a probably [sic] myocarditis and pneumoconiosis, category III." He stated that an "electrogram showed a basically normal sinus rythm [sic] with frequent atrial premature contractions." He explained in his testimony that "premature contractions" are not considered serious and that those with relatively normal hearts often displayed such symptoms upon examination. He stated that the deceased was suffering from "coal miners' pneumoconiosis with no other abnormalities, which means that the heart was of normal size and normal shape." He stated that when the patient was discharged on December 14, "His blood pressure was 136 over 80; there was a regular sinus rythym [sic] without

premature contractions at a rate of 68 per minute. There were no abnormal sounds heard at that time." He saw deceased as an out-patient on January 25, 1967, when he found him "in good shape for a miner 59 years of age."

At a continued hearing held in Charleston on April 19, 1968, Dr. Grover B. Swoyer, pathologist at the Charleston Memorial Hospital and Dr. Benjamin Newman, also a Charleston pathologist, testified for the employer. Their testimony was based upon slides which Dr. Erinc had prepared at the time of his post-mortem examination, testimony and other parts of the record of the case, all of which material was furnished to these physicians.

Dr. Swoyer stated that from a review of the material he had available "I did not feel that I could make a definite conclusion on cause of death. I did feel from the study of the protocol and the slides and the rest of the testimony that there was not sufficient evidence to account for this man dying a traumatic death." He further stated: "I really felt that a more likely cause to explain the circumstances of this man's death would have been on a cardiovascular type of thing rather than a traumatic type of death." He stated that there was "a clearly demonstrable degree of coronary sclerosis in a heart which is probably enlarged." Dr. Erinc stated that the heart weighed 400 grams. No witness testified as to the weight or height of the deceased. Dr. Swoyer was of the opinion that the blood which was found upon the post-mortem examination in the chest cavity was the result of trauma resulting from the embalming of the body by the undertaker.

Dr. Newman reasoned from a hypothesis. He stated that there are three common causes of death: (1) poisoning, (2) coronary arteriosclerotic disease and (3) trauma. He gave this opinion as the cause of death of Ramsey: "My interpretation was this fellow died as a consequence of having coronary arteriosclerosis, he developed an insufficiency which he could have done in the middle of his sleep because many people with coronary heart dis-

eases die while they are asleep. . . ." This witness was of the opinion that a 400-gram heart was not normal but was "enlarged." The last two medical witnesses whose testimony has been commented upon were of the opinion that the blood in the chest and the esophagus of the deceased could not have resulted from trauma inasmuch as there were no broken ribs, Dr. Erinc having had x-rays made of the chest and the skull at the time of his post-mortem examination.

Code, 23-5-4a, directs that this Court shall give to findings of fact of the appeal board the same weight as that accorded to the findings of fact of a trial chancellor or judge in equity procedure. In *Whitt* v. *State Compensation Commissioner*, 153 W. Va. 688, decided at this term of Court, we held, as has this Court before, that such is equivalent to the verdict of a jury in a civil case. This Court has also held that the workmen's compensation law is to be liberally construed and "has consistently applied the liberality rule in the interpretation of evidence in workmen's compensation cases," but we have also held that "no rule of liberality will take the place of the requirement that the claim must be established by proof." The applicable statute and these principles laid down by this Court with reference to workmen's compensation cases mean that a much more complex question is presented in the consideration of an order of the Workmen's Compensation Appeal Board upon factual issues than is presented upon appeal or writ of error where there has been a factual finding by a jury and judgment has been entered thereon by a trial judge. In *Morris* v. *Compensation Commissioner*, 135 W. Va. 425, 64 S. E.2d 496, the issue was whether the deceased had died from an electrical shock or some so-called natural cause. The opinion states that "[t]he autopsy report disclosed no pathological symptoms or indications of electrocution." The appeal board denied benefits to the claimant widow. Nevertheless, this Court reversed the board and this further statement is contained in the opinion: "If the decedent had suffered from a disease or organic failure, such fact would

undoubtedly have been disclosed by the full and complete autopsy. Death of the decedent from natural causes being eliminated, we think nothing remains as the cause of his death except a casualty." That decision was by a 3-2 majority of this Court.

In *Vankirk v. Compensation Commissioner,* 144 W. Va. 447, 108 S. E.2d 567, the decedent received an injury resulting in the amputation of the middle finger of his left hand. That was the extent of his original injury. Thereafter from some cause he began to deteriorate physically and less than a year later died from some cause. A medical witness was of the opinion "that the injury had no connection with the affliction," and another physician was of the opinion that " 'the injury contributed to his death.' " This Court affirmed an order of the board awarding compensation. In the opinion is this language: "We must infer from such facts 'that, in all probability a particular result followed'. . . ."

In *Pannell v. Compensation Commissioner,* 126 W. Va. 725, 30 S. E.2d 129, deceased, a coal miner, died shortly after he had made "a break-through" into an abandoned working place and air came into his vicinity. One physician testified that in his opinion death was caused by contact with poisonous gas and two others that they found "no sign of gas poisoning." Nevertheless, this Court reversed an order of the appeal board denying compensation to the widow and remanded the case with directions to award compensation upon the ground that the deceased's death was due to a specific, isolated, fortuitous event. This statement is contained in the opinion of that case: "In such circumstances, we are driven to rely upon presumptions and probabilities. This is not uncommon in civil cases of all types, and there is no reason why it should not be followed in compensation cases. Indeed, there are special reasons why the principle should be applied in such cases, over those which justify its use in ordinary civil litigation." This is the first syllabus point of *Pripich v. Commissioner,* 112 W. Va. 540, 166 S. E. 4:

> Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disabilities on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him.

It is the opinion of this Court that there is sufficient conflict in the medical testimony as to the cause of Ramsey's death so that the Appeal Board's finding thereon may not be disturbed. A finding of fact by the Workmen's Compensation Appeal Board upon conflicting evidence will not be reversed or set aside by this Court unless clearly wrong. *Burr* v. *Compensation Commissioner*, 148 W. Va. 17, 132 S. E.2d 636.

The order of the Workmen's Compensation Appeal Board of June 30, 1969, is affirmed. This decision will be certified to the Workmen's Compensation Appeal Board and the Workmen's Compensation Commissioner.

*Affirmed.*