ALBERT HAGER

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER,
*and* AMHERST COAL COMPANY

(No. 13178)

Submitted April 18, 1972.        Decided May 30, 1972.

*Franklin W. Kern,* for appellant.

*Edward I. Eiland,* for appellees.

BERRY, JUDGE:

This is an appeal by Albert Hager, hereinafter referred to as claimant, from an order of the Workmen's Compensation Appeal Board of September 29, 1971, which affirmed the State Compensation Commissioner's order of March 11, 1971, which had affirmed a prior order of the Commissioner on July 23, 1969, which held that the claimant had been fully compensated by prior permanent partial disability awards which totaled 55% for injuries sustained in a coal mine owned and operated by Amherst Coal Company.

The claimant was injured in a slate fall on December 17, 1963. The injuries were originally diagnosed as "multiple contusions, fracture of ribs". The claimant was referred to Dr. Heckman who recommended a 40% permanent partial disability award, although he stated in his report that: "It is quite obvious that this man will never return to a gainful occupation * * *." The Commissioner awarded claimant 40% permanent partial disability in his order of March 23, 1965. The claimant protested this award and introduced the medical reports of Dr. Jamison and Dr. Viscuse. Both doctors recommended a 50% permanent partial disability award. The employer introduced the medical reports of Dr. Callender who recommended a 15% award and Dr. Kessel who recommended a 25% award. However, on February 9, 1966 the Commissioner affirmed the 40% permanent partial disability award.

The Commissioner granted claimant's application for a reopening on February 23, 1967. Claimant had submitted another medical report of Dr. Jamison with his application and Dr. Jamison summarized his findings as follows: "When I examined this claimant in 1965, I felt he deserved a 50% permanent partial disability, I remain of that opinion." Claimant was then referred to Dr. Heckman who recommended that claimant be granted an additional 10% award while again commenting that claimant would never return to a gainful occupation. The Commissioner

then granted an additional 10% award and again the claimant protested. At the hearing claimant introduced the medical reports of Dr. Viscuse and Dr. Lesaca. Dr. Viscuse recommended a 50% permanent partial disability award and stated that he felt claimant had a definite progression and aggravation of his condition since he had last been examined. Dr. Lesaca also recommended a 60% award. The employer introduced medical reports of Dr. Callender and Dr. Kessel. Dr. Callender concluded: "* * * I can see no increase in the positive objective physical findings which would substantiate any increase in the permanent partial disability award over and above the previously granted 40%." Dr. Kessel stated that he felt the claimant's condition had not deteriorated since he was last examined. On March 6, 1968 the Commissioner set aside the 10% additional award and granted an additional 15% or a total of 55%.

On October 24, 1968 the claimant again filed an application for reopening and submitted the report of Dr. Viscuse in support thereof. Dr. Viscuse found "a definite progression and aggravation of his condition" and recommended a 65% award. The Commissioner referred the claimant to Dr. Mattill, who, believing mistakenly that the claimant had been granted a 60% award, concluded that a 60% award was "markedly generous". The Commissioner then referred the claimant to Dr. Heckman who stated he felt that the 55% award was "an adequate award and would under no circumstances recommend an increased award". Dr. Heckman also stated: "The objective findings today are essentially the same as they have been in the past. There is no doubt but what this man is disabled to work in the mines but I feel that a 50% permanent partial disability award is an adequate award." The Commissioner then ruled on July 23, 1969 that the claimant had been fully compensated for his injuries. The claimant protested and submitted a medical report of Dr. Jamison who recommended a 60% award and stated that the claimant's condition was of a "progressive nature". However, at the hearing held on March 13, 1970 Dr. Jamison stated on

cross-examination that his findings were "essentially the same" as those of his prior examinations.

Claimant testified at this hearing that he had not been able to return to work since his accident. He stated that he had almost lost sight in his right eye and that he was having "difficulty" with his back, spine, legs and chest. He also stated that he had previously broken a finger while at work but had continued working and had not filed a claim and that he had injured a foot previously but had not filed a claim for that injury either.

The claimant also submitted a report by Dr. Kuhn who concluded that claimant was totally and permanently disabled and that he based his opinion solely upon the injuries sustained to claimant's lower back and lower extremities. Dr. Kuhn had not previously examined the claimant.

Dr. Callender and Dr. Kessel again examined claimant upon the employer's request. Dr. Callender stated in his report: "He continues to get worse all of the time. He has done so since the last examination." However, Dr. Callender concluded: "In comparing this examination with previous examinations of 1967 and 1965, I can see no indication for an increase in this patient's disability which would indicate or justify an increase in the permanent partial disability award over and above the previously granted 55%." Dr. Kessel stated that he felt the claimant had been fully compensated. On March 11, 1971 the Commissioner affirmed his order awarding claimant a 55% permanent partial disability. Claimant appealed to the Workmen's Compensation Appeal Board; however, the Appeal Board affirmed the Commissioner's ruling on September 29, 1971.

It is the claimant's contention that this case is governed by the decision of this Court in the case of *McGeary v. State Compensation Director*, 148 W.Va. 436, 135 S.E.2d 345, and that the claimant should be given a permanent total disability award. This position is not well taken

because the *McGeary* case was an appeal of an original award by the Commissioner which was affirmed by the Appeal Board. The question involved in that case was whether the 60% permanent partial disability award by the Commissioner, which was affirmed by the Appeal Board, was adequate. The case at bar is a reopening case, under Code, 23-5-1a and 1b, as amended. A final award of 55% permanent partial disability had been made by the Commissioner and was not appealed. The only question to be considered in such case is whether there was a progression or aggravation of the claimant's condition, or some new fact not theretofore considered by the Commissioner which would entitle the claimant to a larger award.

The record indicates that the Commissioner had considered reports or evidence to the effect that the claimant was permanently and totally disabled from working in the mines before the final award was made, which was not appealed. Although there is some conflict in the evidence submitted in the reopening of the claim, the reports and testimony of the doctors indicate that his condition was essentially the same as that found by them during their examinations prior to the final award of 55% permanent partial disability. The continuing jurisdiction of the State Compensation Commissioner to modify or change a former finding or order is limited and restricted by Code, 23-5-1a and 1b, as amended. This matter has been considered by this Court on many occasions, and it has been consistently held that where the Commissioner makes a final award of permanent partial disability, which award becomes final by the failure to appeal therefrom, the case cannot be reopened, or any additional compensation made therein unless there is a showing of a progression or aggravation in the claimant's condition, or some new fact not theretofore considered by the Commissioner in the final award which would entitle the claimant to a larger award than that already obtained by him. *Blevins v. State Compensation Commissioner*, 127 W.Va. 481, 33 S.E.2d 408; *Igo v. State Compensation Commissioner*, 128 W.Va. 402,

36 S.E.2d 690; *Taylor v. State Compensation Commissioner,* 151 W.Va. 409, 151 S.E.2d 283; *Garnes v. State Compensation Commissioner,* 153 W.Va. 430, 170 S.E.2d 17. This principle is clearly stated in point 2 of the syllabus of the *Blevins* case in the following language:

"In a compensation case, where the compensation commissioner makes a finding of permanent partial disability, and an award of compensation based thereon, which award becomes final by failure to protest against or appeal therefrom, the case cannot be reopened, or any further award of compensation made therein unless there is a showing of 'a progression or aggravation in claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such claimant to a greater benefit than he has already received * * *.' "

The Appeal Board is a fact finding body, and under the facts presented in the case at bar we are unable to find that the order of the Appeal Board is clearly wrong and an order of the Appeal Board affirming the finding of the Commissioner will not be reversed upon appeal unless it is clearly wrong. *Hosey v. Workmen's Compensation Commissioner,* 151 W.Va. 172, 151 S.E.2d 729; *Ramsey v. State Workmen's Compensation Commissioner,* 153 W.Va. 849, 173 S.E.2d 88; *Backus v. State Workmen's Compensation Commissioner,* 154 W.Va. 79, 173 S.E.2d 353. This matter is succinctly stated in the syllabus of the *Hosey* case, wherein it is stated:

"This Court will not reverse a finding of fact made by the Workmen's Compensation Appeal Board unless it appears from the proof upon which the appeal board acted that the finding is plainly wrong."

For the reasons stated herein, the order of the Workmen's Compensation Appeal Board is affirmed.

*Affirmed.*