WARNIE BURGESS *v.* STATE COMPENSATION COMMISSIONER, *et al.*

(No. 8987)

Submitted September 6, 1939. Decided November 7, 1939.

*Christie & Christie,* for appellant.

*Clarence W. Meadows,* Attorney General, and *Marlyn E. Lugar,* Special Assistant Attorney General, for appellee Workmen's Compensation Appeal Board.

*Sale, St. Clair & Sale,* for appellee Koppers Coal Co.

Fox, PRESIDENT:

The claimant, Warnie Burgess, an employee of the Koppers Coal Company, suffered an injury in the course of and resulting from his employment, on September 8, 1933. He applied for compensation and received an award on a thirty per cent permanent partial disability basis, which was later increased to fifty per cent, the last payment under which was made on July 16, 1937. On April 2, 1938, claimant filed his petition asking that he be given a total and permanent disability rating. On July 19, 1938, the previous rating was continued but the percentage of

disability was increased to seventy per cent, to which action of the Commissioner objection was made by the claimant, and a hearing had with the result that the seventy per cent award was "ratified and affirmed" by the Commissioner on March 21, 1939. On appeal to the Compensation Appeal Board the claimant was, on June 24, 1939, found to be totally and permanently disabled, and compensation directed to be paid on that basis, beginning as of the date of the entry of the order. It is the contention of the claimant that payments under this order should have commenced as of July 17th, 1937, immediately following the date when payments under the previous award ceased. It is obvious that under the order of the Appeal Board the claimant will receive no compensation for the period between July 16, 1937, and June 24, 1939.

The employer defends the action of the Appeal Board in directing payments under its award to begin on June 24, 1939; but by way of cross-assignment of error says the Appeal Board did not have authority to re-rate the disability resulting from the original injury, without evidence of substantial progression or aggravation thereof, and it is contended that no such evidence appears in the record.

Considering first the cross-assignment of error, we must bear in mind the repeated holdings of this court that the compensation statute must be given a liberal interpretation in order that its beneficent purposes may not fail through a strict construction of its terms. *McVey* v. *C. & P. Tel. Co.*, 103 W. Va. 519, 138 S. E. 97; *Caldwell* v. *Compensation Com'r.*, 106 W. Va. 14, 144 S. E. 568; *Kincannon* v. *Compensation Com'r.*, 107 W. Va. 533, 149 S. E. 665; *Bonner* v. *Compensation Com'r.*, 110 W. Va. 38, 156 S. E. 847; *Vandall* v. *Compensation Com'r.*, 110 W. Va. 61, 62, 158 S. E. 499; *Martin* v. *Compensation Com'r.*, 111 W. Va. 420, 162 S. E. 486. Also, the rule no less well established that the Appeal Board is a fact-finding tribunal and that its findings will not be set aside by this court unless clearly wrong. *Rasmus* v. *Workmen's Compensation Ap-*

*peal Board,* 117 W. Va. 55, 184 S. E. 250; *Moore* v. *Appeal Board,* 118 W. Va. 578, 191 S. E. 292. The record shows a serious spinal injury, the first award for which was for thirty per cent disability, later increased to fifty per cent. Within the statutory period a petition was filed asking that the case be reopened on the ground that his condition resulting from his injury had progressively grown worse, and stating the particulars thereof. Reports of physicians support the finding of total permanent disability, which in itself argues a change from his condition at the time the thirty and then fifty per cent disability was found by the Commissioner. Either his condition had progressively grown worse, or there should have been a finding of total permanent disability at the time the thirty and fifty per cent awards were made. We prefer to act on the assumption that the proper findings were made and that the condition of the claimant did grow worse after the dates of said awards. We cannot say that the holding of the Appeal Board on that question is clearly wrong, and, under the authority of the cases cited above, it must be affirmed.

The remaining question is whether the Appeal Board had the right to provide that the payments its ruling called for should begin with the date of its order instead of the date when payment on the last preceding award had ceased. The claimant relies on Code, 23-4-18, which provides:

> "In all cases where compensation is awarded or increased, the amount thereof shall be calculated and paid from date of disability."

contending, as we understand, that his disability must be held to have existed at the time payments on his former award ceased. We do not think this necessarily follows. It is true one physician examined the claimant on July 21, 1937, shortly after the expiration of the former award, and suggested permanent total disability on the ground that he was not able to do manual labor; but his petition for compensation based on his present claim was not filed until April 4, 1938, some eight months later. He

was examined by Dr. Straub on March 17, 1938, and by Dr. Laslie, a medical examiner for the Compensation Commissioner, on June 27, 1938; he was referred to Dr. Wilson, who reported a seventy per cent disability, and presumably, it was upon this report that the award of July 19, 1938, was made. Up to the date when the order of the Appeal Board was entered, June 24, 1939, the disability of the claimant was in dispute. The claimant declined to accept the increased award of July 19, 1938, and demanded a hearing and afterwards prosecuted an appeal. Under these circumstances, we think it can be said with reason that his disability was not ascertained, and could not be said to exist in legal effect, until the entry of the Appeal Board's order. If this be true, then the order of the Appeal Board did not violate the section of the statute quoted above.

It is not amiss to observe that, in practice, increased awards are made on the basis of present disability, and not that existing at date of injury, although, as a general rule, payments are made to begin at the date when payments on a previous award cease. In awards short of those based on total permanent disability the time when payments begin is not of controlling importance, because the limited number of payments will ultimately be made, and the claimant cannot be seriously prejudiced. In cases of total permanent disability the time feature would be important, and the claimant would be entitled to have payments begin at the expiration of his previous award, unless, during the period when his application for a new award is pending, he has been employed in such a way as, could the employment be said to be permanent, he would not be entitled to further compensation. In such a case we see no prejudice to the claimant in making payments begin at the date of the award. We think the case before us comes under this classification. It is the election which the claimant makes not to take the risk as to the permanency of his employment which entitles him to the additional award, and when he moves from one status to another, he cannot justly complain if payment under

the new status begins at the date when, in legal effect, he abandons the status under which he earned and received wages, and which, had it been considered permanent, would have justified the refusal to grant further compensation.

It clearly appears from the record that beginning October 16, 1936, and continuing through all of the time the extent of the claimant's disability was being investigated, he was employed as a sub-station operator and received wages in excess of the sum he would have received as compensation. But it is contended that this should have no bearing on the right of the claimant to receive compensation from and after July 16, 1937, the date when his former award expired. In support of this claim we are cited numerous cases to the effect that a recipient of compensation may engage in work and receive wages therefor without affecting his right to compensation for injuries sustained in a previous employment. This is the express holding of *Gay Coal & Coke Co.* v. *Compensation Com'r.,* 121 W. Va. 200, 2 S. E. (2d) 265, and in that case there is cited *Johnson* v. *Compensation Com'r.,* 109 W. Va. 316, 154 S. E. 766, and *McDaniel* v. *Appeal Board,* 118 W. Va. 596, 191 S. E. 362, as well as many cases from other jurisdictions, all supporting this theory of compensation law. This holding we regard as well established. The fact that a man may be able to do work of a certain character does not mean that he is able to do the work in which a person in his normal situation in life would ordinarily find employment. In the case before us, the claimant's work in the sub-station required him merely to turn an electric switch, a type of work not calling for manual labor, in the ordinary meaning of the term, and we cannot say that he should, on that account, be deprived of compensation, because the work he did is not such as would ordinarily be open to him, and because of the fact that work of this character must necessarily be limited to comparatively few persons. This reasoning finds support in our cases decided on this question. *McDaniel* v. *Appeal Board, supra.*

Here, however, we have a case where the claimant was actually employed in work he was able to do, and for which he received wages in excess of any compensation he would have received had it been awarded him, during all of the time his claim to further compensation was being pressed by him and being investigated by others. We do not dispute his right to contend for compensation, because the work he was doing was not of the type which would ordinarily be open to him, and, therefore, he was not called upon to abandon his compensation claims, and take the risk involved in being deprived of this special work, and be thereby forced back to work which would ordinarily be open to him and for which his injuries had unfitted him; but we do say that having actually been employed up to the date when the final and ultimate award of compensation is made, he cannot complain if his payments thereunder are made to begin with the award. Compensation is supposed to take the place of ability to work. Ability to work should always be considered in fixing compensation. In looking to the future, the claimant is and should be favored and special or unusual work, not ordinarily available, should not be considered; but where the claimant has actually worked and received wages, the Compensation Commissioner should have the right to consider this fact in fixing the time when payments of compensation shall begin, where, as in this case, there has not been a final and ultimate finding on the question of disability. We think this power necessary to a fair and equitable administration of the compensation statute, and we do not think the statute inhibits its exercise.

As matters stood in July, 1937, the applicant's award of compensation had expired; he was employed at wages in excess of the compensation he had been receiving or would receive should the same be continued; had he failed to apply for further compensation within one year he would have been barred; presumably not wishing to take the risk that his employment would not be permanent, he on April 2, 1938, asked for further compensation,

yet continued to work, all of which he had the right to do without prejudice to his claim; but having the right to elect as to his course, he cannot, in justice to the fund, accept employment and receive wages therefor, and at the same time demand compensation during the wage-earning period. Of course, when the award is made, he is entitled to compensation regardless of whether or not he continues to work. It may be contended that the same injustice to the fund exists, but if so, the answer is that the matter has, in the absence of a showing of some fraudulent practices, passed beyond the control of the Compensation Department; while in the case before us the Appeal Board still had the case under its control, and was, under the circumstances, we think, vested with a discretion, not only as to the rate of disability of the claimant but also the time when payments under the award should begin.

We have noted the rule that the compensation statute should be liberally construed. This has its basis in the effort to carry out the benign purposes of our compensation law. The fund is built up and protected to the end that those unfortunate enough to be compelled to resort thereto, may not be denied relief because of lack of funds, and in this connection the future should not be disregarded. The same rule which calls for liberal application of the law, when applied to those entitled to its benefits, justifies, in our opinion, a liberal application of the law to the end that the fund may not be depleted by payments to those who, under circumstances such as are before us, would not appear to be equitably entitled thereto.

The order of the Compensation Appeal Board is affirmed.

*Affirmed.*

KENNA, JUDGE, dissenting:

This case involves only the question of when the compensation of the claimant under his total permanent disability award should begin to run. In my opinion, the majority finding vests in the Compensation Commissioner

and in the Appeal Board a discretion which the statute itself, correctly construed, does not permit. The statute, as I read it, definitely requires that a subsequent award of compensation becomes payable and begins to run at the time of the expiration of the last preceding award. This is the language of the statute:

"* * * In all cases where compensation is awarded or increased, the amount thereof shall be calculated and paid from the date of disability. * * *" (Code, 23-4-18, amended by Acts 1935, ch. 78).

It strikes me as quite apparent that the opinion of the Court does not follow this plain statutory precept, but instead establishes a way by which it can be avoided. If the award of compensation is based upon the existence of a disability caused by claimant's injury, then there can be no gap in his compensable period. It is then a statutory award and the Commissioner's duties are ministerial. I do not believe the statute contemplates that as the result of one injury, more than one disability can develop. That it can is an inescapable premise of the majority conclusion.

To vest a ministerial officer with the discretion that the majority opinion rests upon the Commissioner, to my mind, is inconsistent with this Court's original jurisdiction to hear compensation cases as mandamus proceedings, which rests upon regarding the duties of the Compensation Commissioner as being ministerial. Where there is a judicial discretion involved, as there would be if the Commissioner's judgment controlled the time of making an award of compensation effective, I do not see how in a proceeding likened to mandamus, this Court could review the Commissioner's finding.

Judge Riley authorizes me to say that he concurs in this opinion.