JOE JACKSON

*v.*

STATE COMPENSATION COMMISSIONER AND

POCAHONTAS FUEL COMPANY, *Inc.*, *A Corporation*

(No. 12098)

Submitted April 11, 1961.          Decided May 2, 1961.

*Crockett, Tutwiler & Crockett, Charles A. Tutwiler,* for appellant.

*R. L. Theibert,* for appellee.

BROWNING, JUDGE:

Claimant, Joe Jackson, suffered an injury described as a ''backstrain'' when a mine motor wrecked inside the mine of his employer, Pocahontas Fuel Company, Inc., on April 18, 1957. Upon proper application his claim was declared compensable and he was paid compensation benefits on a temporary basis at the maximum rate. On February 4, 1958, claimant was referred to Dr. D. L. Hosmer of Bluefield for his diagnosis and recommendations as to further treatment. Dr. Hosmer examined claimant on February 28, 1958, noted that claimant had a partial foot drop and limited motion of the back, and recommended a neurological examination. Dr. Hosmer also noted that claimant had been operated on for a ruptured intervertebral disc on April

13, 1956, at Bluefield Sanitarium. Pursuant to Dr. Hosmer's recommendation, claimant was referred to Dr. E. L. Gage for a neurological examination. Dr. Gage, in a letter to the Commissioner, dated May 27, 1958, reported that a myelogram showed "Definite narrowing of the spinal canal between the bodies of L-4 and 5, suggestive of a ruptured disc. There is also deformity of the spinal canal distal to this, most probably due to adhesions." He then stated: "As you will recall this man had been operated on twice previously, by Dr. J. E. Schwab, and he had had a massive protrusion and calcification of L-5 disc and annulus, followed by an infected wound. The man's foot drop never recovered properly, and he still has a left foot drop." Subsequently, on August 8, 1958, in answer to an inquiry from the Commissioner, Dr. Gage stated that in his opinion claimant "has a 40% permanent partial disability at the present time."

Thereafter, on September 4, 1958, claimant was referred to Dr. C. M. Caudill, a member of the Commissioner's Medical Advisory Board, for his examination. Dr. Caudill found that claimant had reached his maximum recovery and, while "Claimant believes he cannot work. * * * I strongly suspect that on the basis of physical disability alone he could work." He then found that claimant was "40% disabled, including neurologic and all other physical factors, with 20% of this having to be ascribed to the changes of the previous injury, asymtomatic though they might have been. If the foot drop had been persistent from before I would feel that he would be 10 per cent disabled on the basis of his compensable injury." Dr. H. A. Swart, also a member of the Commissioner's Medical Advisory Board, examined the claimant on the same day as Dr. Caudill and reported: "This man certainly is not able to work at the present time. I have no suggestions for treatment from an orthopedic standpoint. The disability resulting from the April, 1957, injury, is difficult to separate from that resulting from the 1955 accident, although he said he made

a complete recovery following the injury of 1955. * * * I would suggest that he be given a 40% permanent partial disability."

The Commissioner, by order of January 15, 1959, awarded claimant a 40% permanent partial disability, which award was protested by both claimant and employer. Pursuant to these protests, hearings were held at which the testimony of claimant, Dr. H. C. Kuhn and Dr. E. L. Gage was taken. Claimant testified that: The 1955 injury was sustained in a motor wreck in May of that year; he did not claim compensation because "I tried to wear it off, thought it was just a small strain or something. Of course I went too long for it to be compensable before they discovered my trouble"; after the first operation in April, 1956, he experienced some foot drop until about two months before he returned to work; he returned to work November 15, 1956; and, after returning to work he worked regularly and without difficulty until the motor wreck in April, 1957. Dr. Kuhn testified that he would recommend further surgery. He also testified that once a person had a foot drop he rarely recovered from that disability, but that, in the instant case, with or without the foot drop, in the absence of surgery he would recommend a 50% permanent partial disability. Dr. Gage testified that 15% or 20%, of the 40% disability rating he had previously recommended for claimant, was attributable to the 1955 injury. He also testified that he had noted foot drops which cleared up in 12 to 18 months after the operation for a ruptured disc, others which cleared up much sooner than that, and others which never recovered.

At the conclusion of the hearings, the claimant, by counsel, moved that claimant be referred for the further surgery recommended by Dr. Kuhn and the employer, by counsel, moved the Commissioner to reduce the previous award. On July 12, 1960, the Commissioner set aside his previous order of January 15, 1959, and awarded the claimant a 25% permanent partial disability, from which order claimant appealed.

The Workmen's Compensation Appeal Board, on November 18, 1960, reversed the Commissioner's order of July 12, 1960, and reinstated the Commissioner's order of January 15, 1959, from which order this Court granted an appeal, upon the application of the employer, on February 27, 1961. The claimant did not appeal from this order of the Board.

The Appeal Board, in a written memorandum opinion, based its decision on the ground that the claimant is at least 40% disabled at the present time and, under the provisions of Code, 23-4-9b, as amended, is entitled to that percentage. Code, 23-4-9b, as amended, provides as follows:

"Where an employee has a definitely ascertainable physical impairment originating as hereafter set forth in this section, then in the event that such employee shall thereafter receive an injury in the course of and resulting from his employment, unless such injury results in total permanent disability within the meaning of section 1, article three (§2523) of this chapter, such physical impairment, and the effect thereof, and an aggravation thereof, shall not be taken into consideration in fixing the amount of compensation allowed by reason of such injury, and such compensation shall be awarded only in the amount that would have been allowable had such employee had not had such pre-existing physical impairment. This section shall only apply to definitely ascertainable physical impairments, either:

"(a) Originating either before or after October 1, 1913, otherwise than from an injury received in the course of and resulting from employment, or

"(b) Originating prior to October 1, 1913, from an injury in the course of and resulting from employment, or

"(c) Originating after October 1, 1913, from an injury in the course of and resulting from employment by an employer, who at the time of such injury had not elected to comply with, or was not in good standing, under the workmen's compensation law of West Virginia, or

"(d) Originating in any injury of whatsoever origin whenever received, occurring without the State of

West Virginia, except injuries received after October 1, 1913, in the employ of a subscriber in good standing under the compensation fund of West Virginia in the course of and resulting from temporary employment without the State as defined and limited by section one, article two (§2511) of this chapter."

In the recent case of *Dillon v. State Compensation Commissioner, etc.*, 146 W. Va. 269, 119 S. E. 2d. 89, decided at the January, 1961, term of this Court, the legislative history of Code, 23-4-9b, as amended, as well as the decisions of this Court, which obviously resulted in some amendments to that section, were discussed at some length. What was there said will not be repeated in this opinion. It is the view of this Court that that section has no application to the facts contained in the record of this case. However, upon the conflicting medical testimony and the uncontradicted testimony of claimant, this Court cannot say that the Board was clearly wrong in reversing the Commissioner's order and directing that the claimant be granted a forty per cent permanent partial disability award. Therefore, the Board's order of November 18, 1960, will be affirmed.

*Affirmed.*