JOHN F. BURR

*v.*

STATE COMPENSATION COMMISSIONER

AND UNION CARBIDE CORPORATION

(No. 12210)

Submitted September 10, 1963.    Decided October 8, 1963.

18

*Franklin W. Kern,* for appellant.

*Benjamin D. Tissue,* for appellees.

CALHOUN, JUDGE:

This case is before the Court on appeal from an order of the Workmen's Compensation Appeal Board which affirmed an order of the state compensation commissioner (now the director of workmen's compensation) by which

he held that the claimant, John F. Burr, had sustained no permanent injury as a consequence of an occupational disease arising from his employment by Union Carbide Corporation.

During the course of the claimant's employment by Union Carbide Corporation, there developed a condition in the left vestibule of his nose which was subsequently diagnosed by physicians as a nasal fissure resulting from his exposure to certain fumes or other irritants which are characteristic of the chemical industry in which he was employed.

The claimant first applied for compensation on January 24, 1957, stating in his application that he was thirty-five years of age and that he had been employed in Union Carbide Corporation's plant at South Charleston for sixteen years.

On April 9, 1957, the commissioner referred the claimant to the Occupational Diseases Medical Board which reported on April 18, 1957, its findings that the claimant was suffering from an occupational disease known as nasal fissure; that his condition was first noticed by the claimant about November, 1955; that the condition arose from the employment; and that the condition disabled the claimant intermittently from continuing his regular employment during the period from March 9, 1956, until February 15, 1957, at which time he had not returned to work. These findings were not objected to by either the claimant or the employer and hence all such findings on medical questions became "plenary and conclusive" pursuant to Code, 1931, 23-4-8f, as amended.

On May 3, 1957, the commissioner ordered that the claimant be paid from March 9, 1956, until he was certified as being able to resume his employment, and that thereafter the claim would be closed on a "temporary total basis." Accordingly, the claimant was paid on a temporary total basis for 44 2/7 weeks.

On July 26, 1957, the claimant requested an examination to determine whether he was entitled to a permanent

disability rating. The commissioner thereupon referred him to Dr. J. A. B. Holt, who examined the claimant. Dr. Holt's report was as follows:

"This patient has reached the maximum degree of improvement and does not need any treatment at present. However, we prescribed an antihistimine and Neo-deltacortef ointment for him to apply before going to work and being exposed to the fumes. If with the two medications he still has difficulty we feel it will be necessary for him to refrain from working in the environment.

"In our opinion this patient has no permanent disability."

By an order dated August 23, 1957, the commissioner ruled "that no permanent partial disability, in excess of that paid to you on a total temporary basis, has resulted from your injury * * * and therefore, no further award of compensation will be made." The commissioner's order concluded: "Either party has thirty days from the receipt of this letter within which to file objection with the Commissioner to this finding." No protest or objection was interposed.

On September 10, 1958, twelve months and eighteen days after the commissioner's order or finding of August 23, 1957, the claimant wrote a letter to the commissioner in which he stated: "I would like to request that my claim be reopened. * * * Enclosed you will find a report from Dr. Holt." Dr. Holt's report, which accompanied the application for reopening, did not report any new fact or facts which had not theretofore been considered. It did not expressly state that there had been any progression or aggravation of the claimant's previous condition, but it did state that there "is some increased nasal discharge but no evidence of malignancy." The report stated that medication previously prescribed had "improved him somewhat". In relation to the claimant's condition, the report stated: "We feel it should probably be checked every few months for observation of any malignant change. He is advised to keep the area coated

with an ointment but the only other alternative that we see is for him to change jobs."

It may be questionable whether the claim for reopening was supported by a showing of progression, aggravation or any new fact or facts not previously considered. The commissioner, nevertheless, reopened the claim and referred the claimant to Dr. W. F. Shirkey for examination. In his report, dated November 13, 1958, Dr. Shirkey did not indicate that there was any progression, aggravation or new fact not previously considered but stated that the claimant had told him that he had not reported for work for 2 1/2 months. The report concluded as follows:

> "EXAMINATION OF NOSE: Examination revealed fissure along the vestibule of the right side of the tip of the nose. There is some irritation and dryness of the anterior nares of both sides. There is no evidence of malignant changes. I consider this an occupational disease.

> "RECOMMENDATION: I recommend that he change his occupational environment. This change is necessary to prevent recurrence of this condition. I think he should keep up the local application of the ointment as prescribed by Dr. Holt.

> "I do not recommend any permanent partial disability but I do recommend a change in occupation."

Following Dr. Shirkey's report, the commissioner, on November 14, 1958, entered an order stating "that no permanent partial disability, in excess of that paid * * * on a total temporary basis has resulted from your injury * * * and no further award of compensation will be made." The claimant protested, a hearing was had at which the claimant testified, and the commissioner, on February 19, 1960, affirmed his prior ruling of November 14, 1958, thereby holding again that the claimant had suffered no permanent partial disability as a consequence of his injury.

On the same date, November 14, 1958, the commissioner notified the claimant that he should not continue in em-

ployment which would expose him to chemical fumes, that to do so would constitute wilful self-exposure and that any resulting injury to him would not be compensable. The employer had previously placed the claimant in other positions of employment about its plant at lesser wages, but his condition did not improve in such new situations. On February 1, 1959, the employer discharged the claimant from employment because of that which the employer's agents stated to be humanitarian reasons. Medical testimony in the case indicates that continued exposure of a similar nature might result in malignancy.

The claimant appealed from the commissioner's order to the Workmen's Compensation Appeal Board which, on July 13, 1960, reversed the commissioner's order and remanded the case for further development of certain aspects of the facts. When further hearings were had pursuant to the remand, there was filed with the testimony a new and additional report by Dr. John A. B. Holt, dated August 4, 1961.

In the meantime, and prior to the date of the claimant's discharge from his employment, he moved to Buckhannon, in an area of this state in which there are no industrial plants of consequence, an area which is largely agricultural. Since about the date of the termination of his prior employment, the claimant has been engaged in his own business of selling Gravely tractors at Buckhannon. At the time of the hearing referred to last above, his earnings from his new business venture apparently were considerably less than his earnings from his prior employment. In addition, upon severance from his prior employment, the claimant lost his seniority rights and certain valuable hospital and insurance benefits which had been incidents of his industrial employment. At the final hearing referred to above, he stated that he had tried unsuccessfully to obtain other industrial employment but that no such efforts had been made since he commenced the new business venture at Buckhannon. He appeared to be sanguine in relation to the prospects of the tractor business in which he is engaged.

In his report filed in connection with the final hearing referred to above, Dr. Holt stated that the claimant told him that "now only rarely does his nose bother him and he is much better off since making the change." In respect to the affected area of the nose, the report stated that the "area is moist but there are no leukoplakic changes." The report stated further: "In our opinion this patient has no permanent disability." In relation to the nasal difficulty, the report stated: "Although it is annoying, it is not disabling and we do not feel the patient has any actual disability."

Following the final hearing, the commissioner again ruled "that the claimant suffers no degree of permanent partial disability." The claimant appealed again to the Workmen's Compensation Appeal Board, which, on November 5, 1962 affirmed the ruling of the commissioner. From that order of the appeal board, the claimant was granted the appeal to this Court.

The employer urges several propositions in this Court. It contends that the commissioner's order of August 23, 1957, determining that no permanent disability resulted to the claimant from his injury, is a final, conclusive determination inasmuch as neither party objected to it or appealed from it, and that thereafter the commissioner had no jurisdiction to reopen the claim and inquire again into the question whether permanent disability resulted to the claimant from his injury. The employer contends alternatively that, if the commissioner did have jurisdiction to reopen the claim, it was necessary to do so within one year pursuant to Code, 23-4-16, as amended; that even if the commissioner acted lawfully in reopening the claim after the expiration of one year, the claimant was required by Code, 23-5-1a and 1b, as amended, to prove a progression, aggravation or some new fact not previously considered by the commissioner; and that, in any event, no permanent disability has been established. These contentions fairly state the questions presented for decision.

Code, 1931, 23-5-1, as amended, provides that after making findings such as those embodied in his order of August

23, 1957, the commissioner shall give notice, in writing, to the claimant of his action, "which notice shall state the time allowed for filing an objection to such finding, and such action of the commissioner *shall be final* unless the employer, employee, claimant or dependent shall, within thirty days after the receipt of such notice, object, in writing, to such finding." (Italics supplied). This statutory provision is clear. "The State Compensation Commissioner has no power or jurisdiction to vacate, set aside or modify a final order made by him, except in the instances specifically provided by statute." *Cottrell* v. *State Compensation Commissioner, et al.*, 145 W. Va. 336, pt. 1 syl., 115 S. E. 2d 153. An order of the commissioner is final when entered so far as his jurisdiction to change it is concerned; and this is true notwithstanding the subsequent period allowed for appeal by either party. "The only possible exception to this rule would be a determination by the Commissioner upon competent proof that the final order was made or procured through fraud or mistake." *Collins* v. *State Compensation Commissioner*, 145 W. Va. 774, 777, 117 S. E. 2d 313, 315.

While an order of the commissioner in such circumstances is final and conclusive, it is final and conclusive only as to the facts considered by the commissioner in making such finding. *Meeks* v. *State Compensation Commissioner,* 143 W. Va. 732, 104 S. E. 2d 865. When the commissioner entered his order of August 23, 1957, by which he determined that no permanent partial disability resulted to the claimant from his injury and hence that no further award of compensation should be made, that order became final immediately in respect to the jurisdiction of the commissioner to alter it, except in the instances specifically provided by statute. When the period for appeal expired without protest or appeal, the order became a final, conclusive determination of the absence of permanent disability on the basis of the facts upon which that determination was made.

Code, 1931, 23-5-1a and 1b, as amended, which provide for further adjustment of a claim upon a showing of progression or aggravation of the claimant's condition, or

some other fact or facts which were not theretofore considered by the commissioner in his former findings, merely embody a statutory enactment of a rule which had theretofore been adhered to by the Court. *Igo* v. *State Compensation Commissioner,* 128 W. Va. 402, 407, 36 S. E. 2d 690, 693; *Blevins* v. *State Compensation Commissioner,* 127 W. Va. 481, 494, 33 S. E. 2d 408, 414; *Reed* v. *State Compensation Commissioner,* 124 W. Va. 37, 42, 18 S. E. 2d 793, 795.

For reasons stated, the Court holds that, in the absence of fraud or mistake, the commissioner's order of August 23, 1957, was a final, conclusive determination of the proposition that the claimant suffered no permanent disability from his injury and that he was not entitled to further compensation; that the commissioner did not thereafter have jurisdiction to reopen the claim and to make an award of permanent partial disability to the claimant in the absence of a showing of a progression or aggravation in the claimant's condition or some other fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle the claimant to greater benefits than he has already received; and that no such progression, aggravation or new fact has been established.

In relation to the employer's contention that a one-year period for reopening the claim was applicable in the present situation, we observe that a portion of Code, 1931, 23-4-16, is as follows: "The power and jurisdiction of the commissioner over each case shall be continuing and he may from time to time, after due notice to the employer, make such modifications or changes with respect to former findings or orders as may be justified: Provided, however, that no further award may be made * * * in nonfatal injuries, * * * except within three years after payments for temporary disability shall have ceased or within one year after the commissioner shall have made the last payment in any permanent disability case: * * *." The claimant was not made any award or payment on a permanent disability basis. Such benefits were denied him. The one-year limit cannot, therefore, apply. His only payments were on a temporary basis and, therefore,

the three-year limit is applicable. *Blosser* v. *State Compensation Commissioner,* 132 W. Va. 112, pt. 2 syl., 51 S. E. 2d 71.

We believe also that the commissioner and the appeal board were correct in their holding that, upon this reopening of the claim, no permanent disability had been shown. No medical opinion tends to establish such disability. Findings of fact of the Workmen's Compensation Appeal Board must be accorded by this Court the weight that is accorded to the findings of fact of a trial chancellor or judge in equity procedure. Code, 1931, 23-5-4a, as amended; *Jackson* v. *State Compensation Commissioner,* 146 W. Va. 304, syl., 119 S. E. 2d 657; *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, pt. 1 syl., 5 S. E. 2d 804.

For the reasons stated the order of the Workmen's Compensation Appeal Board dated November 5, 1962, is affirmed.

*Affirmed.*