175 S.E.2d 440 (1970)
Otis V. PENNINGTON
v.
STATE WORKMEN'S COMPENSATION COMMISSIONER and Island Creek Coal Company.
No. 12934.
Supreme Court of Appeals of West Virginia.
Submitted May 19, 1970.
Decided July 7, 1970.
*441 Edward I. Eiland, Logan, for appellant.
R. L. Theibert, Charleston, for appellees.
HAYMOND, Judge:
This is an appeal by the employer, Island Creek Coal Company, from a final order of the Workmen's Compensation Appeal Board entered January 23, 1970, by which the board, one member dissenting, affirmed an order of the Workmen's Compensation Commissioner entered August 14, 1969. By that order the commissioner held that the condition of the claimant, Otis V. Pennington, diagnosed as "herniated disc", was related to the compensable injury sustained by him on February 4, 1965 and was compensable.
The question for determination is whether the evidence is sufficient to support a finding that the "herniated disc" suffered by the claimant resulted from a compensable injury.
On February 4, 1965, the claimant was employed by Island Creek Coal Company as a tipple repair man and was at work on a large 440 volt electric fuse box. He stood on a tool box about eighteen inches in height located about two feet from a hand rail. While he was at work in that position the fuse box exploded and knocked him from the tool box into and against the hand rail. He fell backwards against the hand rail and then fell forward on the floor of the tipple. The explosion caused a fire which extended to the claimant's clothing and inflicted severe and extensive first, second and third degree burns on many parts of his body. He testified that he did not remember whether the explosion knocked him straight down on the floor or into the hand rail; that he started to crawl with his arms to get away from the fire; that his legs were cramped and he could not move them; that he hollered for someone to put out the fire; and that his clothes were on fire.
Fred D. Watkins, a tipple operator who was standing near the claimant at the time, testified that suddenly a fire occurred and he saw the claimant lying flat on the floor on his face, "longways."; that there was a guard rail to keep one from falling on the inside and that the claimant "had only to fall over like this and then bump this guard rail, and then fall forward." He also testified that the claimant began to holler and said "I am burning up"; that the claimant was crawling with his elbows; that his legs were crossed; and that he was not moving his legs.
The claimant was unable to walk and was transported to the Stevens Clinic Hospital, at Welch, and given emergency treatment for his burns and was then transferred to the Bluefield Sanitarium where he was treated by Dr. Robert W. Neilson, Jr. The claimant was unable to work for about four months following his injury.
*442 Before sending the claimant to work Dr. Neilson placed him on calisthenic exercises and believed that the claimant was able to withstand his work when he returned to work on June 7, 1965 and the claimant worked regularly from June 7, 1965 until two weeks after vacation on July 22, 1966. The claimant testified that after the accident in February 1965, he began to have pain and cramps in his legs; that he had no pain in his back after the accident but that the pain was in his hip and down through his left leg and at times would extend down his leg to his foot; that this condition progressed and became very severe during the last three months of the time he worked after the injury. He also testified that when he returned to work following the injury of February 4, 1965, he was not completely well; that he was not able to work as he had worked before the injury; that he was getting worse all the time; that he was unable to bend over or to lift anything or to bend down or stay in a strained position; and that before his injury he had no trouble of that kind. He stated that in 1951 he had some trouble with his back for about two weeks; that his trouble was a muscle strain; that his back was taped and he then went back to work; and that since 1951 he has lost no work and has had no trouble with his back that interfered with his work until he was burned in February 1965. At one time the claimant thought the cramps and pains were caused by circulation in his leg but he was told by his doctor that he did not have a circulatory problem. He was referred to Dr. R. R. Raub, an orthopedic specialist at Bluefield Sanitarium, and to Dr. E. L. Gage, a neurosurgeon. He was examined by Dr. Gage and found to be suffering from a "herniated inter-vertebral disc" and was required to submit to surgery for the removal of the disc on July 28, 1966, more than seventeen months after his injury in February 1965. In the surgical operation a sequestrated disc at L 5 vertebra on the left and a degenerative disc at L 4 vertebra on the left were removed.
After the claimant was found to be suffering from a "herniated disc" Dr. Neilson sent a letter to the Medical Division of the Workmen's Compensation Department, dated September 28, 1966, which was introduced in evidence and in which he stated that there was nothing in his records concerning the possibility of a back injury to the claimant at the time of his thermal injury in February 1965 but that the claimant had such extensive burns over his body that the burns may have obscured a back injury. In the letter Dr. Neilson also said that "It would be quite difficult for me to state that Mr. Pennington did not sustain a back injury at the time of his thermal injury. It is quite possible that he did injure his back at that time and that I failed to investigate the injury due to his severe burns." In his testimony Dr. Neilson also said that "Upon the admission to the hospital he was acutely ill from his burns, which covered approximately 40% of his body surface. He of course complained of severe pain at that time, and these burns occupied my main attentiongiving him blood, and infusions and sedation; and during his whole hospital stay that is the only injury that I detected,his burns. And that is the only thing I treated. I did not have any notation on the chart that he complained of pain in his back. He may have complained of pain in the back but I could have attributed this to his burns, because he was also burned on the back." Dr. Neilson would not express an opinion concerning an injury to the claimant's back, but testified that "There could have been one, and I could have missed it altogether due to the severe burns the patient had. There is a possibility that he had it and I missed it."
On December 16, 1965, the commissioner referred the claimant to Dr. Ray E. Burger for disability evaluation. Dr. Burger examined the claimant on December 28, 1965, and in his report, dated December 30, 1965, introduced in evidence, Dr. Burger stated that the claimant complained of some drawing sensation in his neck, sensitivity *443 of his face, some itching and burning and his legs itched particularly in his thighs, and that he had discomfort. He also stated that there was normal range of motion in his hips, knees, ankles and feet and some sensitivity of the burned and skin grafted areas. Dr. Burger recommended a 10% permanent partial disability award and the commissioner made a 10% permanent partial disability award by order entered January 12, 1966. This award was protested by the claimant and hearings were held in connection with the protest.
After his protest the claimant, at his instance, was examined by Doctors C. W. Stallard and George F. Fordham. Dr. Stallard in his report, dated March 5, 1966, introduced in evidence, stated that the claimant complained of pains in his legs and itching of scars on his face, neck and chest, and diagnosed his condition as scars resulting from multiple burns. Dr. Stallard reported that he knew of no treatment that would benefit the claimant except to grease the scars with some kind of ointment, and he recommended a 15% permanent partial disability award. Dr. Fordham in his report, dated June 25, 1966, introduced in evidence, stated that the claimant had tightness of the scars in his neck with a pulling sensation, and almost constant soreness in his legs which is worse in the left leg, a cramping sensation and night cramps which have become progressively worse; that the more the claimant exercised the more pain he had; that there was some swelling of his feet; that his burned areas bled easily; and that the claimant had received no prior injury. Dr. Fordham recommended a 20% permanent partial disability award.
At the conclusion of the hearings in connection with claimant's protest of the 10% permanent partial disability award he asserted that his "herniated disc" condition resulted from his injury of February 4, 1965 and moved the commissioner to determine the "herniated disc" injury to be compensable which, as already indicated, the commissioner did by his order of August 14, 1969; and further proceedings before the commissioner as to the extent of the permanent partial disability of the claimant have been delayed pending final determination of the compensability of his "herniated disc" condition.
The employer contends that the holding that the "herniated disc" condition of the claimant is compensable is not supported by the evidence or by medical evidence to show a causal connection between that condition and the injury of February 4, 1965.
Though it is true that other than the statement of Dr. Neilson as to the possibility of a back injury which he may have overlooked because of the pain caused by the burns suffered by the claimant, there is no medical evidence bearing upon the question of the causal connection between the explosion which caused the claimant to fall from the tool box and sustain the burns to his body on February 4, 1965, and his "herniated disc" condition, medical evidence of the cause of the injury is not always required to establish the compensability of an injury in a compensation case. See Deverick v. State Compensation Director, 150 W.Va. 145, 144 S.E.2d 498. In that case this Court held that medical evidence was necessary to show that the disability in question resulted from a cerebral thrombosis but stated that "medical evidence may not be required in every compensation case."
This Court has held in numerous cases that the cause of an injury may be established, without direct evidence, by circumstances and physical facts sufficient to warrant an inference that the injury was received in the course of and resulted from the employment of a claimant. Vankirk v. State Compensation Commissioner, 144 W. Va. 447, 108 S.E.2d 567; Morris v. State Compensation Commissioner, 135 W.Va. 425, 64 S.E.2d 496; Pannell v. State Compensation Commissioner, 126 W.Va. 725, 30 S.E.2d 129; Keller v. State Compensation Commissioner, 125 W.Va. 185, 24 S.E.2d 81; Manning v. State Compensation Commissioner, *444 124 W.Va. 620, 22 S.E.2d 299; Collett v. State Compensation Commissioner, 116 W.Va. 213, 179 S.E. 657; Demastes v. State Compensation Commissioner, 112 W.Va. 498, 165 S.E. 667; Pripich v. State Compensation Commissioner, 112 W.Va. 540, 166 S.E. 4; Hall v. State Compensation Commissioner, 110 W.Va. 551, 159 S. E. 516; Poccardi v. Public Service Commission, 75 W.Va. 542, 84 S.E. 242, L.R.A. 1916A 299.
In the Vankirk case, in which the widow of a deceased employee was awarded benefits as his dependent under the Workmen's Compensation Act, this Court, quoting from Pannell v. State Compensation Commissioner, 126 W.Va. 725, 30 S.E.2d 129, in the opinion said: "We are often called upon to determine matters where there is no satisfactory proof on which to base a decision, and yet a decision must be made. In such circumstances, we are driven to rely upon presumptions and probabilities. This is not uncommon in civil cases of all types, and there is no reason why it should not be followed in compensation cases. Indeed, there are special reasons why the principle should be applied in such cases, over those which justify its use in ordinary civil litigation. There is, of course, no presumption in the case before us; but there are facts from which we can say that, in all probability a particular result followed * * *". In the opinion in Morris v. State Compensation Commissioner, 135 W.Va. 425, 64 S.E.2d 496, in which a dependent widow of Harry Morris, a deceased employee, was held to be entitled to workmen's compensation benefits, this Court used this language: "The record discloses no direct evidence of how the death of Harry Morris occurred, but the absence of such evidence does not preclude an allowance of compensation benefits, if circumstances are shown from which it may be inferred that his death resulted from such employment. While it is incumbent upon the claimant to establish her case by a preponderance of the evidence, this may be, and is, done by establishing physical facts that would warrant an inference that death was due to an injury received in the course of and resulting from the decedent's employment."
Though there is no positive evidence to establish, to the exclusion of all other causes, that claimant's "herniated disc" condition resulted from the explosion on February 4, 1965, there is substantial evidence to support the finding of the commissioner, affirmed by the board, that such condition resulted from the explosion which occurred in the 440 volt fuse box. There is no evidence that indicates that the "herniated disc" condition of the claimant was caused by any event other than the explosion of February 4, 1965. There is likewise no evidence that the claimant had any pre-existent disc problem or low back injury or any injurious back condition or disease other than the temporary sprain which he experienced in his back and from which he completely recovered in 1951, approximately fourteen years before he was injured on February 4, 1965. The facts surrounding his injury of February 4, 1965 show that the claimant was knocked from his position on the tool box into the hand rail behind him and that in his fall to the floor of the tipple his back came in contact with the hand rail. The evidence also shows that from the time of the injury the use of his legs, particularly the left leg, was impaired; that the condition of his legs became progressively worse and rendered him unable to work after July 22, 1966 and he was, of course, still unable to work when the surgical operation was performed on July 28, 1966 for the removal of the sequestrated disc on the left at L 5 vertebra and the degenerative disc on the left at L 4 vertebra; and that the condition of his legs was a symptom that led to the surgical operation. Though his attending physician refused to express an opinion as to the cause of the "herniated disc" condition, he indicated that the claimant could have sustained an injury to his back which the severe pain caused by the extensive burns could have obscured and prevented him from detecting. It is not reasonable *445 to conclude, from the evidence as a whole, that the existent "herniated disc" condition of the claimant resulted from or was caused by any other occurrence than the explosion on February 4, 1965.
The finding of the compensability of the "herniated disc" condition of the claimant by the commissioner, which has been affirmed by the appeal board, is supported by the evidence and will not be disturbed by this Court. Though the claimant in a compensation case has the burden of proving his claim, evidence from which a reasonable person may conclude that the claimant was injured while performing his duties in the course of his employment is sufficient. Eady v. State Compensation Commissioner, 148 W.Va. 5, 132 S.E.2d 642; Machala v. State Compensation Commissioner, 109 W.Va. 413, 155 S.E. 169.
It is well established by many decisions of this Court that in order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong. Partlow v. Workmen's Compensation Commissioner, 150 W.Va. 416, 146 S. E.2d 833; Dombrosky v. State Compensation Director, 149 W.Va. 343, 141 S.E.2d 85; Tate v. State Compensation Director, 149 W.Va. 51, 138 S.E.2d 636; Eady v. State Compensation Commissioner, 148 W. Va. 5, 132 S.E.2d 642; Burr v. State Compensation Commissioner, 148 W.Va. 17, 132 S.E.2d 636; Jackson v. State Compensation Commissioner, 146 W.Va. 304, 119 S. E.2d 657; Morris v. State Compensation Commissioner, 135 W.Va. 425, 64 S.E.2d 496; Walk v. State Compensation Commissioner, 134 W.Va. 223, 58 S.E.2d 791; Vento v. State Compensation Commissioner, 130 W.Va. 577, 44 S.E.2d 626; Prince v. Compensation Commissioner, 123 W.Va. 67, 13 S.E.2d 396; Burgess v. State Compensation Commissioner, 121 W.Va. 571, 5 S.E.2d 804; Moore v. Workmen's Compensation Appeal Board, 118 W.Va. 578, 191 S.E. 292; Rasmus v. Workmen's Compensation Appeal Board, 117 W.Va. 55, 184 S. E. 250. In the Vento case this Court held in point 1 of the syllabus that "In order to reverse a finding of fact by the Workmen's Compensation Appeal Board it must appear from the proof upon which the board acted that the finding in question was plainly wrong."
This Court has also held that "A decision of the Workmen's Compensation Commissioner, from the evidence before him, which has been affirmed by the Workmen's Compensation Appeal Board, will not be disturbed by this Court on appeal, if it is supported by any reasonable appraisal of the evidence." Point 2, syllabus, Dombrosky v. State Compensation Director, 149 W.Va. 343, 141 S.E.2d 85; point 3, syllabus, Stevely v. Compensation Commissioner, 125 W.Va. 308, 24 S.E.2d 95.
Furthermore, the facts disclosed by the record bring this proceeding clearly within the holding of this Court in Pripich v. State Compensation Commissioner, 112 W. Va. 540, 166 S.E. 4, in which this Court held in point 1 of the syllabus that "Where, in the course of and arising out of his employment, an employee in good health and of strong physique, suffers physical injury which is followed by serious disabilities, competent physicians differing as to whether the disabilities are attributable to the injury, but only probable or conjectural reasons or causes are assigned by physicians in an effort to explain the disability on grounds other than the injury, the presumptions should be resolved in favor of the employee rather than against him."
As to the appraisal of the evidence in compensation cases, this Court has repeatedly recognized and applied the liberality rule in the interpretation of evidence in such cases. Dombrosky v. State Compensation Director, 149 W.Va. 343, 141 S.E.2d 85; Buckalew v. State Compensation Director, 149 W.Va. 239, 140 S.E.2d 453; McGeary v. State Compensation Director, 148 W.Va. 436, 135 S.E.2d 345; Eady v. State Compensation Commissioner, 148 W. *446 Va. 5, 132 S.E.2d 642; Turner v. State Compensation Commissioner, 147 W.Va. 145, 126 S.E.2d 379; Williams v. State Compensation Commissioner, 127 W.Va. 78, 31 S.E.2d 546; Burgess v. State Compensation Commissioner, 121 W.Va. 571, 5 S.E.2d 804.
The order of the Workmen's Compensation Appeal Board, affirming the order of the commissioner, holding the "herniated disc" condition of the claimant to be compensable, is affirmed.
Affirmed.