WILLIE BALL

*v.*

WORKMEN'S COMPENSATION COMMISSIONER *and* WESTMORELAND COAL COMPANY

(No. 13273)

Submitted January 10, 1973.  Decided February 13, 1973.

*George G. Burnette, Jr.,* for appellant.

*Shaffer, Shaffer & Hall, H. Gus Shaffer,* for appellee.

NEELY, JUDGE:

This case is an appeal from a final order of the Workmen's Compensation Appeal Board dated September 28, 1972, in which the Board reversed the Workmen's Compensation Commissioner's ruling of February 22, 1972, which awarded the claimant a 40% permanent partial disability. In place of the Commissioner's 40% award, the Board awarded a 25% permanent partial disability.

The record discloses that on October 2, 1967, at the age of sixty-two, the claimant, Willie Ball, sustained an injury to his back while shoveling coal for his employer, Westmoreland Coal Company. He was taken to a hospital where he was treated conservatively by traction, heat, and physical therapy for approximately twenty-five days. He returned home, and continued under a doctor's care for approximately one year, but was unable to return to work. Ultimately, as a result of his 1967 injury, claimant underwent an operation for a ruptured intervertebral disc. All evidence indicates that since his 1967 injury the claimant has not returned to work. During this period

of unemployment the claimant was compensated by 112-6/7 weeks of temporary total disability.

The Commissioner selected Dr. A. A. Abplanalp to evaluate the disability resulting from the October 2, 1967 injury, and Dr. Abplanalp reported that the claimant had suffered a 25% permanent partial disability.

On January 5, 1970, the Commissioner awarded a 25% permanent partial disability; however, because of the temporary total disability payments the Commissioner ruled that no further payment was due.

The claimant protested the initial award, and was examined by four other doctors. Dr. Russel Kessel requested the medical evidence pertaining to a previous back injury sustained by the claimant in 1956, and after reviewing those records, Dr. Kessel recommended an award of 30%. Dr. C. W. Stallard, relying exclusively upon the claimant's condition after 1967, testified that the 1967 injury resulted in a 40% permanent disability. Dr. Harold H. Kuhn said in his report:

> "Dr. Kessel has recommended a 30%, Dr. Stallard a 40%. I am in agreement with Dr. Kessel and Dr. Stallard."

Upon review of the record, the Commissioner entered an order dated February 22, 1972, granting claimant a 40% disability for the 1967 injury. The employer appealed, and the Appeal Board reversed, and ordered a 25% permanent partial disability award.

This Court is of the opinion that the Appeal Board's order of September 28, 1972 is clearly wrong, both with respect to the inferences drawn from the facts and the Board's interpretation of the applicable law.

It appears from the record that the claimant sustained a prior injury to his back on September 18, 1956, which was the subject of Workmen's Compensation claim No. 57-25703. At that time the claimant was incapacitated for seventy-two weeks, for which he was paid total temporary

disability benefits. In the 1956 case the claimant was not awarded a permanent partial disability, and he returned to work until his injury on October 2, 1967. The Appeal Board assigned the prior injury as one of the reasons for reducing the award from 40% to 25% and said:

> "In evaluating this record, the board is of the opinion that the medical evidence supports the conclusion that the claimant suffered a 25% permanent partial disability as the result of injuries which he sustained on October 13, 1967. We believe that a fair appraisal of the evidence would reflect that any disability suffered by the claimant in excess of this figure would be traceable to his prior injury of 1956. It is therefore our opinion that the Commissioner, in awarding the claimant a 40% permanent partial disability in his order of February 22, 1972, was in error."

The only statutory authority for the reduction of an award because of pre-existing physical impairments is Chapter 23, Article 4, Section 9b of the *Code of West Virginia*, 1931, as amended, which was in effect at the time of the injury. The statute in effect at the date of injury controls. *Lancaster v. State Compensation Commissioner*, 125 W.Va. 190, 23 S.E.2d 601 (1942). The pertinent part of Section 23-4-9b of the *Code*, which was in effect at the time of the injury, provides:

> " * * * This section shall only apply to definitely ascertainable physical impairments, either:

> "(a) Originating either before or after October one, nineteen hundred and thirteen, otherwise than from an injury received in the course of and resulting from employment, or

> "(b) Originating prior to October one, nineteen hundred and thirteen, from an injury in the course of and resulting from employment, or

> "(c) Originating after October one, nineteen hundred and thirteen, from an injury in the course of and resulting from employment by an employer, who at the time of such injury had not elected to comply with, or was not in good

standing, under the Workmen's Compensation Law of West Virginia, or

"(d) Originating in any injury of whatsoever origin whenever received, occurring without the State of West Virginia, except injuries received after October one, nineteen hundred and thirteen, in the employ of a subscriber in good standing under the compensation fund of West Virginia in the course of and resulting from temporary employment without the State as defined and limited by section one, article two of this chapter."

Clearly claimant's 1956 back injury does not fall within the categories set out in the statute, as it was a compensable injury for which compensation was received under claim No. 57-25043. As the prior injury was compensable and did not fall within any of the statutory catagories allowing a reduction, we need not reach the issue of whether it was definitely ascertainable under the statute.

Furthermore, the Court is of the opinion that the inferences which the Appeal Board drew from the record clearly violate the principle that evidence shall be liberally construed in favor of the claimant. *Pennington v. Commissioner,* 154 W.Va. 378, 175 S.E.2d 440 (1970). Dr. Abplanalp, who examined the claimant for the Commissioner, testified that claimant sustained a 25% permanent partial disability. Dr. Stallard recommended a 40% disability, and Dr. Kessel testified to a 30% disability. Dr. Harold H. Kuhn said that he agreed with Dr. Kessel and Dr. Stallard, which though inexact, must reasonably be taken to mean that Dr. Kuhn evaluated claimant's injury at no less than 30%. Dr. George Callender recommended an award of 15%, but it appears from the record that Dr. Callender, in making his recommendation of 15%, based his conclusion on medical evidence adjusted by his interpretation of the Workmen's Compensation Law. For example, Dr. Callender says:

"The injury of 1956 is, of course, barred by the statute of limitation. It is, however, related to the

present injury and it demonstrates the presence of a pre-existing pathology. This patient has been granted a 25% permanent partial disability award. He had already been paid approximately 28%. At this time it is my opinion that the permanent partial disability for the injury sustained on October 2, 1967, should be made on the basis of pre-existing pathology and subsequent surgery. It is my feeling that the disability award should not exceed 15%."

The integration of Dr. Callender's conclusions of law with his medical conclusions made it impossible for the Commissioner to determine whether his purported medical testimony was based on an examination of claimant's physical condition, or rather on the doctor's conclusion as to claimant's legal rights to further compensation.

The claimant's testimony indicates that claimant was severely injured and has not been able to return to work. He was under a doctor's care for over a year, and finally underwent major surgery for a ruptured disc. Claimant's testimony was uncontroverted, and the Board should have sustained the Commissioner's ruling which obviously accorded the claimant's testimony weight along with the medical testimony.

Consequently, the order of the Workmen's Compensation Appeal Board is reversed, and the case is remanded to the Appeal Board with directions to reinstate the 40% award originally granted by the Commissioner.

*Reversed and remanded with directions.*