FOSTER H. HARVEY

*v.*

WORKMEN'S COMPENSATION COMMISSIONER

*and*

ISLAND CREEK COAL COMPANY

(No. 14306)

Decided April 10, 1979.

*Amos C. Wilson* for appellant.

*Edward I. Eiland* for Island Creek Coal.

PER CURIAM:

The claimant, Foster H. Harvey, contends that the Workmen's Compensation Appeal Board erred in failing to hold that he was permanently and totally disabled as a result of an accident which occurred on August 20, 1970.

On August 20, 1970, the claimant injured his low back while lifting a rock in the course of his employment as an electrician with Island Creek Coal Company.

By order entered August 31, 1971, the Workmen's Compensation Commissioner awarded the claimant 10% permanent partial disability for the injury. That award was increased to 13% permanent partial disability by order entered July 6, 1972.

On March 21, 1974, the claimant petitioned for reopening of his claim. The claim was reopened, and by order entered May 31, 1974, the Workmen's Compensation Commissioner awarded the claimant 7% permanent partial disability in addition to the 13% previously awarded. Both the claimant and the employer protested this additional award.

During the protest hearings in the case conflicting orthopedic and psychiatric evidence was adduced concerning the claimant's condition.

Four orthopedists, Dr. Russel Kessel, Dr. Randolph L. Anderson, Dr. Frank R. Jamison, and Dr. Roy R. Raub, respectively, rated the claimant's orthopedic disability at 13%, 20%, 25%, and 25%. Only Dr. Raub suggested that the claimant might be totally disabled as a result of his August 20, 1970 injury.

In his report dated October 22, 1974, Dr. Raub stated:

"It is my opinion, that he is not totally disabled on the basis of this injury, however. The major problem was a pre-existing disability but the injury aggravated this to the extent of a 24% permanent partial disability."

Dr. Raub, in a later report said:

"My interpretation of the disability is that he could do some other type of work but he will have a very difficult time in doing hard, strenuous, active work. On the basis of his injury, I would say he is 25% disabled. If you combine the pre-existing condition, there is a very excellent chance that this patient is totally disabled, certainly for anything he is capable of doing, on a remunerative earning."

When examined regarding his findings, Dr. Raub testified:

"Q. Dr. Raub is it your opinion that because of this total condition of the low back that he would be totally and permanently disabled, as an underground coal miner?

A. I didn't say that as I recall.

. . .

Q. Do you feel he is totally disabled as an underground coal miner?

A. The last time I saw him, I have only seen him on three occasions, he had a marked limitation of motion in the back. That would not necessarily mean he was always that way, back conditions do improve. On the basis of that examination where he had marked limitation of motion if he stayed that way forever I say there was an excellent chance that he was totally disabled for the things he is capable of doing such as coal mining. That's based on that one examination, it must be recalled that when I examined him that I didn't say he was totally disabled."

On cross-examination, Dr. Raub clarified his testimony. First, he admitted that the claimant was skilled as an electrician and then testified as follows:

"Q. But if he could use his skills or was offered the opportunity to use his skills where he would not have to do that [bend his back or do lifting in restricted positions] do you see any reason why he could not be employable?

A. I think he is employable under the circumstances you mentioned."

Doctors Kessel, Anderson and Jamison failed to find that the claimant was totally disabled as a result of his back injury.

In addition to orthopedic evidence, both the claimant and the employer introduced psychiatric evidence.

Dr. Leslie J. Borbeley, who testified in behalf of the claimant, stated in a report dated October 8, 1975, that the claimant had suffered approximately 35% permanent partial psychiatric disability attributable to his accident. Testifying in behalf of the claimant, Dr. Borbeley changed his view and stated that the claimant's overall psychiatric impairment was between 75% and 80%. Dr.

Borbeley also stated that this was attributable to the August 20, 1970 accident.

When cross-examined, Dr. Borbeley testified as follows:

"Q. Since you admit that he had the condition at the time of the back strain, consider that he kept working after the back strain, and that you didn't see him until nearly four years after the back strain, doesn't it involve speculation on anyone's part to determine whether there is any relationship between the back strain, and his psychiatric illness?

A. It's always assumption and speculation by the individual who examines the patient. You have to take into consideration all the factors involved, not just this particular incident, but also everything else. It could be arbitrary and could be, but you cannot deny, because it's a factual thing. You suffer a trauma and you will suffer consequences. The more labile an individual you are, the more consequences you will suffer from trauma. Even, not necessarily to be severe physical trauma, it could be many other things, and it's an undeniable fact, and it can be proven.

Q. But you have to engage in some assumptions in order to conclude that there is any relationship between the back strain, and this man's schizophrenia, isn't that right?

A. I think you phrased the question the wrong way. I never stated that there was any relationship between the schizophrenic illness and his back strain. I stated that his over-all psychiatric condition is related to the trauma which he suffered with his back in part, and that's my statement."

Dr. William B. Rossman, another psychiatrist who examined the claimant, stated in his report dated June 11, 1977, that:

"Clinically he [the claimant] reflects a certain element of futility in his attitude about himself. Now, aging slightly and with hypertension and obesity to his credit, his preoccupation with his condition produces some phobic symptoms which are associated with his chronic discomfort. This is the same condition he had when I examined him in February of 1976. At that time I recommended a 5% impairment award for a chronic psychoneurosis with anxiety. I would not change my recommendation after the examination today."

Dr. Charles C. Weise, the third psychiatrist who examined the claimant concluded:

"In summary, patient has a history of previous Hysteric episodes and the most appropriate psychiatric diagnosis at this time would be that of Hysteric Neurosis with associated mild anxiety symptoms. Patient's present situation, that is of his not being employed, is probably causing him some emotional distress. I think that the anxiety symptoms patient currently feels represent a 7 per cent partial-permanent psychiatric disability."

Based upon this evidence the Workmen's Compensation Commissioner by order dated August 22, 1977, set aside his May 31, 1974 order awarding the claimant 7% additional permanent partial disability (making a total 30% award). The Workmen's Compensation Appeal Board, by its order dated May 31, 1978, affirmed this action by the Commissioner.

The claimant now appeals contending that he is entitled to a permanent total disability award.

The rule in this State is that the Workmen's Compensation Appeal Board is a fact finding body, and its rulings, on questions of fact, will not be reversed or set aside by this Court unless clearly wrong. *Johnson v. State Workmen's Compensation Commissioner*, 155 W. Va. 624, 186 S.E.2d 771 (1972); *Burr v. State Compensation Commissioner*, 148 W.Va. 17, 132 S.E.2d 636 (1963).

Under our Workmen's Compensation Law an employee is permanently and totally disabled when:

1. He is unable to perform any remunerative work in a field of work for which he is suited by experience or training, *Posey v. State Workmen's Compensation Commissioner*, ___ W.Va. ___, 201 S.E.2d 102 (1973); or

2. Aggregating all prior ascertainable impairments, he is, at a minimum, 85% disabled, *Gillespie v. State Workmen's Compensation Commissioner*, ___ W.Va. ___, 205 S.E.2d 164 (1974).

After carefully examining the record before us, we note that it indicates that the claimant is an electrician and that he has worked in the mines for a number of years. Otherwise, it is devoid of information regarding the claimant's education and work experience.

We see nothing in the record which demonstrates that the claimant is disabled under our holding in *Posey*. Although Dr. Raub's testimony, when liberally construed, indicates that in his opinion the claimant is unable to continue working in restricted positions or as an underground coal miner, even that testimony fails to demonstrate that the claimant is unable to perform any remunerative work in a field for which he is suited by experience or training.

In addition to raising the question of whether he is permanently and totally disabled under our holding in *Posey*, the claimant suggests that by aggregating his ascertainable impairments, he is, at a minimum, 85% disabled and should thus be considered permanently and totally disabled.

If we aggregate the highest total evaluations of the claimant's condition, those of Drs. Raub and Borbeley, we do arrive at a total impairment in excess of 85%. However, about the findings of Drs. Raub and Borbeley we note two things: (1) the testimony of each is contradicted by that of several other specialists in the same field, and (2) the testimony of each is so inherently inconsistent and contradictory that it is impossible to con-

clude that either found that the claimant's condition was attributable to an injury received in the course of and resulting from his employment.

In view of the foregoing, we cannot conclude that the findings of the Workmen's Compensation Appeal Board are clearly wrong.

The ruling of the Workmen's Compensation Appeal Board is, therefore, affirmed.

*Affirmed.*

McGRAW, JUSTICE, *dissenting:*

I respectfully dissent from the majority opinion on the grounds that the Appeal Board and the Commissioner did not liberally construe the evidence or the Workman's Compensation Act in favor of the claimant, consistent with the well established law in West Virginia. *Sowder v. State Workmen's Compensation Commissioner,* 155 W. Va. 889, 189 S.E.2d 674 (1972); *Buckalew v. State Compensation Director,* 149 W.Va. 239, 140 S.E.2d 453 (1965).

The majority finds that the claimant's aggregated ascertainable impairments do not amount to an 85% total disability. They concede that if the evidence were interpreted in the light most favorable to the claimant, his disability would exceed 85%. They refuse, however, to apply the liberality rule, saying that contradictions among the medical experts and inconsistencies in favorable medical testimony make it impossible to find that the claimant's condition was attributable to his work-related injury. Poppycock! I see no merit in either argument as a restriction on the application of the liberality rule.

Conflicts in expert medical evidence are subject to the rule of liberal construction just as are conflicts in other evidence and the Commissioner may not arbitrarily disbelieve or exclude from consideration competent medical testimony, absent credible evidence that the testimony is unreliable. *Persiani v. State Workmen's Compensation Commissioner,* _____ W.Va. _____, 248 S.E.2d 844 (1978). All

of the medical experts here agree that the claimant's present condition is the result of the traumatic injury in 1970, which progressively aggravated his pre-existing congenital back infirmity and psychological problems. They simply do not agree to what extent his condition was aggravated. These contradictions should be resolved in favor of the claimant upon application of the liberality rule.

As to the alleged inconsistencies and contradictions in the favorable testimony of Dr. Raub and Dr. Borbeley, I am hard-pressed to find them. Dr. Raub's testimony indicates that he believed the back injury alone did not impose total disability on the claimant but when the injury was combined with the pre-exising back condition, the chances were good that the claimant was totally disabled and incapable of doing strenuous, active work. Dr. Raub also opined that the claimant would be employable if his work did not involve bending or lifting, but this opinion is not inconsistent with his prior testimony. Rather, the unmistakable import of Dr. Raub's testimony was to the effect that if the claimant were put in a work situation where his condition did not prevent him from working, he would be able to work. I cannot understand how the majority would interpret this statement of the obvious as being a contradiction.

Dr. Borberley's testimony indicated that the claimant's psychological condition was related to the trauma of the back injury. The majority apparently believes that the fact that Dr. Borberley's opinion involved speculation vitiates any value that opinion has. In this context, I would simply note that the nature of psychological disorders makes its practically impossible to precisely measure the extent of the infirmity. An x-ray can detect a broken bone or sometimes a diseased lung and give us a picture revealing the severity of the injury, but there is no diagnostic device which can produce a picture of pain or mental disorder. Instead, we rely on the opinions of experts trained to recognize symptoms and to track down their causes. Speculation or deliberative hypothesis, as the doctor pointed out, is one of the

tools a psychiatrist is trained to use in making treatment judgments involving his patients and his use of that tool in evaluating a patient's illness does not make his opinion any less valid.

For these reasons I believe the majority erred in not finding the claimant to have an 85% disability. I think a liberal interpretation of the evidence clearly indicates that the claimant was permanently and totally disabled and should have been granted a life award.